Joseph G. Jacobs, Administrator of Estate of Joseph R. Jacobs, Deceased, Plaintiff-Appellee, v. Illinois National Bank and Trust Company, Administrator of Estate of Lyle G. Yardley, Deceased, Defendant-Appellant.

Gen. No. 10,505.

Opinion
filed September 14, 1951. Rehearing denied December 13, 1951. Released for publication December 13, 1951.

KNIGHT, HAYE & KEEGAN, of Rockford, for appellant.

RAPHAEL E. YALDEN, of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Originally, the complaint in this case consisted of two counts. The Illinois National Bank and Trust Company, Administrator of the estate of Lyle G. Yardley, deceased, was the defendant in Count One, and Edwin Heinzeroth was the defendant in the second count. At the conclusion of the evidence offered on behalf of the plaintiff, the suit was dismissed as to the defendant, Edwin Heinzeroth, and Count Two was withdrawn from the consideration of the jury.

Count One alleged that on May 8, 1950, Lyle G. Yardley operated an automobile in a southerly direction on

Kilburn Avenue Road about four miles north of Rockford; that plaintiff's intestate, Joseph R. Jacobs, was a passenger in this automobile, but had nothing whatsoever to do with the driving or operating of said automobile and had no control or direction over its operation or any control or direction over its driver, Lyle G. Yardley; that Lyle G. Yardley in driving said automobile in which Jacobs was a passenger committed one or more of the following acts or omissions, amounting to wilful and wanton misconduct: (a) drove at a speed greater than was reasonable and proper having regard to the traffic and at a speed which endangered persons rightfully on the highway; (b) drove said automobile at a dangerous rate of speed; (c) drove said automobile on the east half of the highway which would be the left side as he drove south; (d) failed to keep said motor vehicle under proper control and (e) operated said automobile in a wilful and wanton manner. The complaint then charged that as a result of said wilful and wanton misconduct on the part of Yardley, the car in which plaintiff's intestate was riding came in contact with a northbound car being driven by said Edwin Heinzeroth and as a direct result of said wilful and wanton misconduct of Yardley, Joseph R. Jacobs was injured and died the same day. The complaint averred that plaintiff's intestate and his next of kin were at the time of the accident and at all times in the exercise of due care and caution for the safety of the said Joseph R. Jacobs and averred that neither he or his next of kin were guilty of wilful and wanton misconduct at the time of the accident or at any time mentioned in the complaint.

The answer of the defendant denied all the charges of wilful and wanton misconduct; denied that Yardley was driving the car; denied that Jacobs was riding as a passenger; denied that Jacobs had no control over the driver or over the operation of the car and denied

the averments that plaintiff's intestate and his next of kin were in the exercise of due care and caution for the safety of plaintiff's intestate and denied that plaintiff's intestate and his next of kin were not guilty of wilful and wanton misconduct. Upon a jury trial of the issues, the plaintiff recovered a verdict for $7,500 and after motions for judgment notwithstanding the verdict and for a new trial were overruled, judgment was rendered upon the verdict and the defendant, Illinois National Bank and Trust Company, administrator of the estate of Lyle G. Yardley, appeals.

The evidence discloses that Kilburn Avenue Road is a concrete-paved highway eighteen feet wide which runs northwesterly from Rockford. Upon the trial, the parties stipulated that, for clarity, Kilburn Avenue Road would be considered as running east and west. Tate Road is a country road running north from Kilburn Avenue Road, and its intersection with the Kilburn Avenue Road is about one-half way up a long hill which rises toward the west. The top of this grade is about 550 or 600 feet west of the Tate Road intersection. About 10:00 o'clock on the evening of May 8, 1950, Edwin Heinzeroth, thirty-seven years of age, was driving a 1949 Ford automobile in a westerly direction on Kilburn Avenue Road. He was accompanied by his cousin, Theodore Heinzeroth, the owner of the automobile, who sat in the front seat on the right-hand side of the car. When the Heinzeroth car had reached a point approximately halfway between the crest of the hill and the Tate Road intersection, a car driven by Ralph Kindell in its proper traffic lane passed him going east. Mr. Kindell intended to turn left, that is, to the north, on the Tate Road. Mr. Heinzeroth was called by counsel for plaintiff as an adverse witness and testified that he first observed the lights of the Yardley car as it came to the crest of the hill; that it was then between 575 and 625 feet ahead of him in

33

the middle of the highway and continued in an easterly direction bearing to the left and into Heinzeroth's lane of travel; that he, Heinzeroth, turned his car to its right and at the time of the collision was straddling the right edge of the pavement; that during the time the Yardley car traveled 375 feet he, Heinzeroth, traveled between 200 and 250 feet; that he did not see the occupants of the Yardley car as it came toward him; that the collision was head-on and at that time about one-half of each car was on the right dirt shoulder of the highway. The testimony of this witness as abstracted continued: "Don't know what happened to either car after the accident. Would say other car going faster than I; don't know how much; would estimate 15 or 20 miles per hour; don't think it changed speed after I saw it. Looked like it skidded a couple of times. Think it was straight at time of collision; think cars hit only once; we were going between 50 and 55 at time of collision. When I was at bottom of hill I first saw reflection of lights over top of hill. Halfway up, near Tate Road first saw headlights. In a couple of seconds saw second set of headlights. Collision occurred possibly two seconds after that. First car (driven by Ralph Kindell) going pretty slow and seemed to be slowing down. I was always in proper lane. Cars at least half off of pavement at time of impact. Collision about halfway from Tate Road to top of hill. First aware two cars approaching me when I saw second set of headlights. When I saw car, took my foot off gas and turned wheel to right. Couple of seconds intervened before the crash."

Ralph Kindell, accompanied by his wife, was returning to his home on Tate Road and was driving a 1949 Ford automobile in an easterly direction on Kilburn Road just before the collision took place and intended to turn north into Tate Road. Mrs. Kindell testified that she did not see the cars before the acci-

34

dent but just heard the crash. Mr. Kindell testified that he was driving 35 to 40 miles per hour when he reached a point 350 or 400 feet west of Tate Road; that he observed in his rear mirror the headlights of a car coming from the west and also observed the headlights of the Heinzeroth car approaching him from the east. He testified: "the car from the west seemed to be coming fast and I swung off on the shoulder. I was about 300 feet east of the crest of the hill when I first noticed car behind me. Just driving along, glanced in mirror, noticed light and saw car coming over grade. It was on south side of the highway going east. I looked down the road and seen this other car (the Heinzeroth car) coming and it seemed to be on its own side of the road and I looked back in the mirror to see what the other car was doing and it was right on top of me and I turned off on the shoulder and drove about one hundred feet on shoulder and stopped 250 or 300 feet west of Tate Road. Car coming from the east (Heinzeroth car) was at Tate Road when I first saw it. It was on the north side of road. After it passed me I heard a crash. I estimate it was a matter of seconds after it passed me when I heard crash. Seems I heard crash as soon as I got on shoulder. Last time I saw car behind me it was going east on south side of highway. It looked like he was coming right straight behind me. Did not see it turn from south to north half. Estimate it was about 100 feet behind me last time I saw it. Heard no horns or brakes. Estimate west bound car going 50 miles an hour. Have no way of knowing how fast car from west was being driven. Estimate around 80 miles and hour . . . Had not seen lights of that car coming behind me at any time before I got to crest of hill. Was down over crest of hill aways when I saw lights coming up behind. Never did see that car on highway except on south side. Didn't see who was in it at any time."

After the collision, the Yardley car came to rest on its right side partially on the west traffic lane of the pavement and partially on the dirt shoulder to the north and headed south. The generator was found on the south side of the highway 140 feet west and the motor was found 100 feet west of the Yardley car. The Heinzeroth car was on its wheels entirely on the dirt shoulder on the north side of the pavement headed northwest, parallel with the pavement and 9 or 10 feet from the edge of the pavement and just north of the Yardley car. Both cars were approximately 200 feet from the Tate Road and 300 feet from the crest of the hill. A black track mark indicated that a portion of the Heinzeroth car had traveled some seventy feet on the north dirt shoulder before the collision.

The bodies of both occupants of the Yardley car were found in the bottom of the wreckage. The body of Yardley was on top of the body of Jacobs. A wrecker came and when the car was hoisted to an upright position, the body of Yardley fell to the left of the body of Jacobs and was behind the driver's wheel and the body of Jacobs was beside him in the front seat.

Joseph G. Jacobs testified that he was the father of Joseph R. Jacobs; that he last saw his son alive about 8:00 o'clock of the evening of the accident; that Lyle Yardley and his son were friends, mutually interested in music; that Joseph, the son, was a senior in high school, 17 years of age, had always lived at home, weighed 150 pounds and was 5 feet 8 or 9 inches tall at the time of the accident; that after school and on Saturdays he was employed at a grocery store, played a saxophone and clarinet in the orchestra, had no physical disability, was not quick in movements but careful, got passing grades in school, helped around the house and was obedient.

J. R. Guinn testified that he operated a grocery store in Rockford; that plaintiff's intestate, Joseph

36

R. Jacobs, worked for him eight hours on Saturdays and on other days from 4:00 to 6:00 o'clock; that for his services he received sixty cents an hour; that on May 8, 1950 he worked until six o'clock; that he was prompt, steady, quick in mental processes, but slightly on the slow side in his movements; that he was a courteous, satisfactory employee, appeared in good health and had no impairment when he walked.

William Latham and Lester Krug each testified that they arrived at the scene of the accident shortly after it happened; that they observed the position of the cars and looked into the wreckage; that the Yardley car was turned on its right side and they observed the position of Yardley's body, and did not know another body was underneath Yardley's until the car was up-righted.

It is insisted by counsel for appellant that the verdict is based upon conjecture and surmise; that appellee failed to prove by a preponderance of the evidence that appellant's intestate, Lyle Yardley, was driving the car at the time of the accident; that the record does not show that Joseph R. Jacobs was free from wilful and wanton misconduct which contributed to his death and that, if Lyle Yardley was driving the car at the time of the accident the evidence fails to show that he was guilty of wilful and wanton misconduct.

Counsel for appellee concede that there is no direct testimony found in the record to the effect the Lyle G. Yardley was driving the 1939 Ford automobile at the time of the collision but call our attention to the evidence which discloses that after the accident the car in which Yardley and Jacobs were riding turned over and came to rest on its right side; that the body of Jacobs was on the bottom fully covered by the body of Yardley; that the arm of Jacobs was crushed, while the arms of Yardley had nothing wrong with them except some scratches; that when the car was turned back

on its wheels, Yardley's body fell into the driver's seat underneath the steering wheel and the body of Jacobs fell into the seat to the driver's right. These circumstances, insist counsel for appellee, were sufficient to warrant the jury in concluding that Yardley and not Jacobs was driving the car at the time of the collision. Counsel for appellant, however, argue that the effect of the natural forces aroused by this collision tangled the bodies of Yardley and Jacobs into the positions testified to by the witnesses and that it is equally consistent with the evidence to infer that Jacobs was driving the car as it is to say that the car was being driven by Yardley and that the jury's finding that Yardley was the driver of this car is based solely upon guess, surmise, conjecture and speculation.

 Whether Yardley was driving the car was a question of fact and, like any other fact, may be proved by circumstantial as well as by direct evidence. A greater or less probability, leading, on the whole, to a satisfactory conclusion is all that is required to establish controverted facts by circumstantial evidence. (*Ohio Building Safety Vault Co., v. Industrial Board*, 277 Ill. 96, 102, 3; *Lindroth v. Walgreen Co.*, 407 Ill. 121, 135.) The *Lindroth* case quotes from *Lavender v. Kurn*, 327 U. S. 645, 90 L. Ed. 916, 66 S. Ct. 740 as follows, viz.: "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." In considering defendant's motion for judgment notwithstanding the verdict, we assume, without deciding, that the evidence was sufficient to warrant the jury in finding that Yardley was the driver of the automobile in which Jacobs was riding.

It is next insisted by counsel for appellant that there is an entire absence of proof in this record to sustain the allegations of the complaint to the effect that Joseph R. Jacobs, just before and at the time of the collision, was riding in the car as a passenger and that there is no evidence in the record to support the allegations of the complaint to the effect that Jacobs had no control over the driver or over the operation of the car and no evidence that Jacobs was free from wilful and wanton misconduct which contributed to his own death.

*Clarke v. Storchak,* 384 Ill. 564 was an action under the Injuries Act to recover damages sustained when plaintiff's intestate husband was killed while riding as an alleged passenger in defendant's automobile. It appeared that the automobile was being driven by defendant on a state highway near Waukegan and when it reached a point approximately one block south of where it subsequently plunged through the iron post and wire-netted rail above Downey Road which was an underpass, it took a sudden turn to the left and went diagonally across the road for 150 feet and off the pavement on the left side of the road. After travelling off the pavement about 150 feet more, it went diagonally to the right across the road for approximately another 150 feet, at which point the automobile plunged through the railing to the underpass below. In sustaining the ruling of the trial court in instructing the jury to find that the plaintiff could not recover under the charges of wilful and wanton misconduct, the court stated that if the record disclosed there was any evidence, which taken with its intendments most favorable to the plaintiff, tended to prove that the accident causing the injuries was occasioned by defendant's wilful and wanton misconduct, that then the trial court erred. The court then defined wilful and wanton misconduct; citing the cases of *Bartolucci v. Falleti,* 382 Ill. 168 and *Streeter v. Humrichouse,* 357 Ill. 234 and

at page 580 said: "Plaintiff contends that during the entire time defendant did not at any time reduce the speed of the automobile, did not apply his brakes, either foot or emergency, but continued recklessly ahead so the automobile was going as fast when it completed it's journey back and forth across the road as when it started, and that these facts should have been submitted to the jury upon the question of defendant's wilful and wanton conduct. A failure to comply with a speed statute for automobiles does not necessarily establish wilfulness or wantonness. The rate of speed and the attending circumstances must also be taken into consideration. . . . Failure to apply the brakes is not enough without sufficient attending circumstances. The question as to just what caused the car to take a sudden turn to the left after it ran off the highway is uncertain. . . . It would seem from the evidence that the accident was due to the wheels striking the dirt portion of the shoulder while defendant's car was travelling at 45 miles per hour and that the defendant, in turning to get back on the pavement, lost control and plunged to the underpass below. It is evident that when defendant's car first went onto the shoulder and he attempted to return to the pavement, he lost control of its operation, which he never regained, certainly it could not be said that, under the circumstances as shown here, his act in losing control of the operation of the automobile was an intentional disregard of a known duty necessary to the safety of the person or property of another and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences or that, in doing the act or failing to act, he was conscious of his conduct, and though having no intent to injure, was conscious, from his knowledge of the surrounding circumstances and conditions, that his conduct would naturally and probably result in

40

injury. The accident occurred in the daytime on a main highway, where there were no other cars about, and without obstruction of any kind to warn the driver, or circumstances which would require the driver of an automobile to be on his guard. Construing the evidence most favorably to plaintiff, together with all reasonable inferences arising therefrom, there is a conspicuous lack of proof; (a) of any consciousness on the part of the defendant that his conduct would naturally and probably result in injury; (b) of any intentional disregard of a known duty; (c) any absence of care for the life, person or property of others such as exhibited a conscious indifference to consequences.''

*Johnson v. Trust Co. of Chicago,* 343 Ill. App. 647, 99 N. E. (2d) 715 was an action brought to recover for injuries which plaintiff sustained while riding as an occupant of an automobile driven by defendant's intestate. The evidence disclosed that defendant's intestate, accompanied by the plaintiff, was driving a Buick automobile near La Grange, Illinois on a forty-foot paved highway when the automobile left the highway striking a tree located about ten feet west of the paved portion of the highway. The accident occurred about 1:00 o'clock a. m. on January 25, 1947 and the evidence disclosed that the pavement was covered with a ''frosty glare'' and was ''very slick at certain speeds'' and tire marks were observed after the accident on the pavement approximately two hundred feet long extending from the northbound lane and across the southbound lane to the automobile where it came to rest against the tree. The amended complaint consisted of one count and the specific acts of misconduct alleged were that defendant's intestate drove the automobile at a high and dangerous rate of speed; that he failed to keep the automobile under proper control, failed to stop when danger of collision was

41

imminent and failed to keep a proper lookout for objects and trees alongside the highway. In reversing a judgment for the plaintiff for $65,000 the Appellate Court of the First District cited and quoted from *Clarke v. Storchak,* 384 Ill. 564, *supra,* stated that the mere fact that an accident resulted in an injury to a person does not authorize a presumption or inference that the defendant was negligent, that the force or severity of the impact of an automobile, is not sufficient to support the charges made and that the tire marks at best would only tend to prove the direction in which the automobile travelled but would not explain why it did so, citing, among other cases, *Rotche v. Buick Motor Co.,* 358 Ill. 507; *Celner v. Prather,* 301 Ill. App. 224 and *Cox v. Dreher,* 293 Ill. App. 323. The court then said: "In the instant case there is no evidence tending to show what caused the automobile to take the course it did and strike a tree. It may have been due to some mechanical failure of the automobile, the slippery pavement, defendant's intestate attempting to avoid other vehicular traffic, or other causes, all of which are left to speculation."

Assuming that Yardley was driving this car at a high rate of speed over the crest of the hill and into his wrong traffic lane and partially onto the left earthen shoulder and there collided with the Heinzeroth car. There is no evidence tending to show what caused the car to take the course it did. Just as said in the *Johnson* case, *supra,* it may have been due to some mechanical failure of the automobile, or to defendant's intestate attempting to avoid hitting the Kindell car, or it may have been due to interference by plaintiff's intestate with the driver. Whether either Yardley or Jacobs were familiar with the road they were travelling does not appear nor does it appear who owned the car that Yardley was driving or whether he was familiar with its operation or whether he was or

42

was not an experienced driver. Nor does it appear whether he was or was not keeping a lookout; whether either or both occupants were or were not asleep; whether Jacobs did or did not warn the driver of impending danger; whether Jacobs was a guest-passenger or a passenger-for-hire; whether the occupants were or were not engaged in a joint enterprise nor does it appear where they were going or in whose car they were riding at the time of the accident. The answer to none of these queries appears in the record. All is speculation and conjecture.

██ Before this plaintiff is entitled to recover he must prove the material allegations of his complaint. The burden is upon him to prove by a preponderance of the evidence, direct or circumstantial, that his intestate was riding in an automobile driven by Yardley as a guest-passenger, that plaintiff's intestate had no control over the driver of the car or control over its operation and that the driver of the car in which he was a passenger was guilty of wilful and wanton misconduct and that he, plaintiff's intestate, was free from wilful and wanton misconduct which proximately contributed to his death.

█ The evidence found in this record being construed most favorably to plaintiff, together with all reasonable inferences arising therefrom, does not fairly tend to support the allegations of Count One of the complaint. From the evidence it appears that Jacobs was guilty of misconduct to the same degree as Yardley. (*Willgeroth v. Maddox,* 281 Ill. App. 480, 485.) (*Sharp v. Brown,* 343 Ill. App. 23, 98 N. E. (2d) 122.) The judgment of the circuit court of Winnebago county is reversed and the cause is remanded with directions to enter judgment notwithstanding the verdict for the defendant and against the plaintiff.

*Reversed and remanded with directions.*