Richard Zank, Administrator of the Estate of Lillian Zank, Deceased, Plaintiff-Appellee, v. Chicago, Rock Island and Pacific Railroad Company, and Edna Stangle, Defendants-Appellants.

Gen. No. 47,339.

First District, Second Division.

October 21, 1958.

Released for publication November 13, 1958.

Erwin W. Roemer, of Chicago (Erwin W. Roemer, Joseph P. Carr, of counsel) for Chicago, Rock Island and Pacific Railroad Company, appellant.

Charles D. Snewind, of Chicago for Edna Stangle, defendant-appellant.

Joseph Barbera, of Chicago, for appellee.

JUSTICE KILEY delivered the opinion of the court.

This is an action by a surviving husband, as administrator of his wife's estate, to recover damages for injuries suffered by her, as a passenger in an automobile, before her death from another cause. The jury returned a verdict for $15,000 against both defendants and they have appealed from the judgment on the verdict.

About four p. m. on the afternoon of January 3, 1952, Decedent was a passenger in an automobile being driven west in 94th St., Chicago, by defendant Edna Stangle, called Driver herein. While crossing the intersection of defendant Railroad's right of way east of Longwood Drive, the automobile was struck by a southbound passenger train belonging to the Railroad and both Decedent and Driver were injured.

The complaint charged the Railroad with negligence and the Driver with willful and wanton misconduct. In addition to returning the general verdict of guilty as to both defendants, the jury answered in a special interrogatory that the Driver had been guilty of willful and wanton misconduct at the time of, or just before, the occurrence. Both defendants moved for judgment notwithstanding the verdict and the Driver also moved to set aside the special interrogatory and for a new trial.

In our view of the case the fundamental question is whether the record justified a finding by the jury that the Decedent was free from willful and wanton misconduct. If she was guilty of willful and wanton misconduct the verdict against the Driver must fall and a

279

fortiori the verdict against the Railroad must fall. But the fundamental question depends upon the question whether the special interrogatory should be set aside.

The Railroad right of way intersects 94th St. at right angles, and supports two sets of tracks, the eastern set being for northbound, and the western set being for southbound, trains. Between the sets of tracks is a thirteen foot space. A slight incline leads 94th St. to the right of way on the east and the crossing is paved and level. Houses are on four corners of the intersection and east of the crossing on the north side of 94th St. are four houses built close together with trees and shrubbery between them. The only safety devices at the crossing were "cross bar" signs and a single crossing bell on the southeast corner of the crossing.

The day was light at the time of the occurrence but there was "lots of snow on the street" with ruts in the snow and the streets were icy and slippery in the 20–25 degree weather.

We think the special interrogatory is not against the manifest weight of the evidence. The Driver's own testimony is that she slowed down to 3 or 4 miles per hour as she came to the crossing. Familiar with the crossing, she looked south to see whether any northbound trains were approaching. Then without looking north to see whether any southbound trains were approaching she drove at 3 or 4 miles per hour onto the northbound tracks. When she looked she saw the train approaching 150 feet away. Despite the snowy, icy condition of the crossing she tried to "beat the train" across the intersection, although she was doing but 3 or 4 miles per hour and she had the width of the northbound tracks plus the adjacent thirteen feet in which to stop.

But the Driver's testimony also is that Decedent was at her side in at least as good a position as the Driver to observe the danger and that Decedent "said nothing

280

to distract" the Driver's attention. The plain inference from this testimony is that the Decedent relied upon Driver and did nothing to warn or advise against the Driver's reckless conduct, indicating a reckless disregard of the danger or a reckless failure to observe the danger. Thus by analogy we have a situation similar to that in Opp v. Pryor, 294 Ill. 538, and if the lack of due care there offset defendant's negligence we think Driver's willful and wanton misconduct here is matched by Decedent's willful and wanton misconduct.

Plaintiff alleged that Decedent was free from willful and wanton misconduct. The answer denied this. Plaintiff made the allegation presumably to meet the "requirement" set forth in Jacobs v. Illinois Nat. Bank & Trust Co., 345 Ill. App. 30, 43. We need not decide whether, in charging willful and wanton conduct, an allegation of Decedent's freedom from willful and wanton misconduct is essential nor need we decide where the burden of proof lay. We think the judgment must be reversed in either event.

■ Assume the burden of proof is on the plaintiff. We must determine by the familiar rule governing the question whether the case was for the jury. Plaintiff argues that the presumption based on the "instinct of self preservation" is enough to take the case to the jury. This argument fails because there were eyewitnesses who testified, Newell v. Cleveland, C. C. & St. Louis R. Co., 261 Ill. 505, 510. The testimony of the eyewitnesses, however, was not favorable to the Decedent. The only statement that could be taken as a basis for a favorable inference is that of the Driver that Decedent "was not engaged in a conversation so that my attention from my driving was distracted." An inference might be drawn that Decedent did not say anything to distract Driver and was prudent in doing so. This would be a forced inference, however, from a statement wrenched from the context of the physical

281

facts and all the testimony. And if it were considered sufficient to take the case to the jury, the inference could not justify a jury finding Decedent free from willful and wanton misconduct in the face of all the testimony that she was as guilty of willful and wanton misconduct as Driver.

The same evidence that justified the jury in finding Driver guilty of willful and wanton misconduct stands against Decedent. She was in the front seat on Driver's right and they were talking. Decedent was awake and consequently aware of what was going on. She knew Driver was either going on the right of way unconscious of the southbound train's approach or indifferent to it. Decedent either knew the train was approaching or did not look to see whether it was approaching. If she did not know it was approaching she, in disregard of the dangerous situation, recklessly relied upon the Driver's reckless conduct. If she knew it was approaching she should have done something to "distract" Driver from trying to race the train through the intersection. Pienta v. Chicago City Ry., 284 Ill. 246, 259.

The Decedent and Driver "were confronted by the same conditions and . . . the same facts cannot be used to establish the guilt of one and innocence of the other." Valentine v. England, 6 Ill.App.2d 275. That case cited Opp v. Pryor, 294 Ill. 538, in support of the statement quoted. The Opp case was negligence, but by analogy it is precedent for our decision here: there the injured plaintiff was unable to remember at the trial the circumstances of the collision; here the injured party died and her testimony was absent at the trial. There and here the injured party sat at the right of the driver. There and here the injured guest had "at least" equal opportunity to observe danger and the approach of the train. There the court decided that it was error to tell the jury that though the driver did

282

not exercise ordinary care for the safety of her passenger, the passenger might have been in the exercise of due care "without the slightest evidence that she did anything at all." See also Willgeroth v. Maddox, 281 Ill. App. 480; Jacobs v. Illinois Nat. Bank & Trust Co., 345 Ill. App. 30, 43; Gulf, Mobile & O. Ry. Co. v. Freund, 183 F.2d 1005, 1013; Hinkle v. Minneapolis, A. & C. R. Ry. Co., 162 Minn. 112, 202 N. W. 340; Restat. Torts Sec. 503(2); Harper & James The Law of Torts, vol. II, p. 1214.

Assume the burden was on Driver. Certainly she has stated enough to take the defense of Decedent's willful and wanton misconduct to the jury. Then in the face of all her testimony and that of the railroad workman called as witness by plaintiff, the testimony would overwhelmingly be against a finding against the Driver on the issue.

Therefore in either view of the burden of proof we think the judgment cannot stand. And it cannot stand whether we consider that the record has some evidence of Decedent's freedom from willful and wanton misconduct or whether we consider it contains none. If none, judgment notwithstanding should have been given the Driver. If we say there was some evidence for the jury, the verdict cannot stand against the overwhelming contrary evidence of the Driver. The overwhelming evidence in this case is uncontradicted. Any evidence favorable to plaintiff is too strained to be reasonable so that we think no reasonable person could find in plaintiff's favor.

█ We conclude therefore that the verdict against Driver must be set aside because there can be no reasonable inference to support a finding that though the Driver was guilty of willful and wanton conduct the Decedent was not equally guilty.

Since this is so the verdict against the Railroad must fail even assuming it was guilty of negligence. If the

283

jury could not find, on the only evidence in the case, that Decedent was free from willful and wanton conduct, a fortiori it could not find she was in the exercise of due care.

For the reasons given the judgment is reversed, and the cause is remanded with directions to enter judgment for defendants notwithstanding the verdicts for plaintiff.

Reversed and remanded with directions.

LEWE, P. J. and MURPHY, J., concur.