(No. 35147.—)

RICHARD ZANK, Admr., Appellant, *vs.* CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY *et al.,* Appellees.

*Opinion filed September 24, 1959—Rehearing denied Nov. 16, 1959.*

474

JOSEPH BARBERA, of Chicago, for appellant.

ERWIN W. ROEMER, of Chicago, (JOSEPH P. CARR, of counsel,) for appellee Chicago, Rock Island and Pacific Railroad Company, and CHARLES D. SNEWIND, of Chicago, for appellee Edna Stangle.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an action for personal injuries suffered by plaintiff's intestate, Lillian Zank, when a car in which she was riding collided with a passenger train of the defendant Chicago, Rock Island and Pacific Railroad Company, herein called the railroad. Plaintiff's intestate died thereafter from other causes and plaintiff sued both the railroad and the defendant driver Edna Stangle, herein called the driver. Upon trial, the court overruled defendants' motions for a directed verdict, for judgment notwithstanding the verdict and for new trial, and entered judgment against both defendants on the jury verdict in the sum of $15,000.

The Appellate Court reversed and remanded with directions to the trial court to enter judgment for defendants

notwithstanding the verdict on the ground that a directed verdict should have been entered for the defendants because there was no evidence establishing the decedent's freedom from contributory willful and wanton misconduct. (19 Ill. App. 2d 278.) We granted leave to appeal.

The complaint charged the railroad with negligence and the driver with willful and wanton misconduct. The general and long accepted rule of law is that contributory negligence of the plaintiff is a defense for a defendant charged with negligence. The corollary of this rule, which is of more recent origin, is that contributory willful and wanton misconduct of the plaintiff is a defense for a defendant charged with willful and wanton misconduct. *Valentine v. England,* 6 Ill. App. 2d 276; *Gulf, Mobile and Ohio Railroad Co. v. Freund,* (8th Cir.) 183 F.2d 1005; *Lane v. Bobis,* 340 Ill. App. 10; *Willgeroth v. Maddox,* 281 Ill. App. 480; Restatement of Torts, vol. 2, sec. 503.

Thus, the determinative question presented to us is whether the evidence, taken most favorably to the plaintiff, shows that plaintiff's intestate was guilty of contributory willful and wanton misconduct as a matter of law. If she was guilty of such misconduct, the verdict against the driver must fall and, *a fortiori,* the verdict against the railroad cannot stand.

While we are precluded from weighing the evidence, except as to equitable issues, to determine where the preponderance lies, (Ill. Rev. Stat. 1957, chap. 110, par. 92(3)(b),) where a motion is made in the trial court to direct a verdict, or for judgment notwithstanding the verdict, or where the Appellate Court directs or enters such judgment, we may examine the evidence to determine whether, as a matter of law, there is any evidence in the record to prove the essential elements of the case. *Tucker v. New York, Chicago and St. Louis Railroad Co.* 12 Ill.2d 532; *Robinson v. Workman,* 9 Ill.2d 420; *Illinois Central Railroad Co. v. Oswald,* 338 Ill. 270.

It is clear that in deciding that the plaintiff cannot recover as a matter of law, we must first consider all the evidence in the aspect most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom. If, when so considered, there is any evidence, standing alone and considered to be true, together with the inferences that may legitimately be drawn therefrom, which fairly tends to support the jury verdict, it is error for the Appellate Court to direct a judgment notwithstanding the verdict. *Tucker* v. *New York, Chicago and St. Louis Railroad Co.* 12 Ill.2d 532; *Seeds* v. *Chicago Transit Authority,* 409 Ill. 566; *Lindroth* v. *Walgreen Co.* 407 Ill. 121.

The collision in which plaintiff's intestate was injured occurred in Chicago at 4:00 P.M. on January 3, 1952, at the right angle intersection of 94th Street, which runs in an easterly and westerly direction, and the railroad's double tracks. The streets were icy and slippery but it was light and clear. Houses are located on the four corners of the intersection, together with trees and shrubbery, and cinders and dirt were embanked on the edge of the right of way, all of which tended to impair the visibility. The driver testified that the house on the northeast corner would obstruct visibility to the north until a westbound vehicle was within 10 feet of the first track, while an employee of the railroad testified that the house would obstruct the view until such vehicle was within 50 feet of this track. The photographs of the locale also substantiate the contention of limited visibility at the intersection.

The driver proceeded west on 94th Street at a speed of 10 to 15 miles an hour, and testified that she slowed down to two to three miles per hour when she was 15 feet from the first or northbound track; that she looked to the south and saw no approaching northbound train; and that, while still on the northbound track, she looked to the north and saw a train approaching on the second or southbound track, about 100 feet away. There was a distance of 13

feet between the northbound and southbound tracks and a slight incline toward the second or southbound track, and in relating the subsequent events, she said, "I stepped on the gas in an attempt to get by in order to beat the train across the tracks." She did not remember engaging in any conversation with the plaintiff's intestate who sat to her right.

An employee of the railroad saw the driver looking toward the passenger, which would be to the north, and testified that they were engaged in conversation, but he did not pay too much attention to the passenger. He further testified that when the automobile was 10 to 15 feet east of the southbound track and the train was five or six feet north of 94th Street, he waved both hands and hollered, "Stop;" and that the car was approaching at 15 miles per hour, but he does not know if it slowed down. The driver testified that she did not hear a bell ringing as she approached the crossing, but the railroad employee testified that the automatic bell, which had been out of order, was ringing.

The only crossing protection at the intersection was two crossbuck railroad crossing signs and a single crossing bell which was activated by an electrical impulse. The engine of the southbound train collided with the right front corner of the car, causing injuries to plaintiff's intestate.

In addition to the general verdict, the jury, in a special interrogatory, found that the driver was guilty of willful and wanton misconduct at the time of or just before the occurrence. The Appellate Court found that the special interrogatory was not against the manifest weight of the evidence and further found, as a matter of fact, that the driver drove at a speed of three or four miles per hour onto the northbound track before looking north; that when she looked to the north and saw the approaching train, it was 150 feet away; and that despite the snow and ice on the crossing, she tried to "beat the train" across the intersection,

although she was then travelling only three or four miles per hour and had the width of the northbound track plus the adjacent 13 feet to the southbound track within which to stop. These findings of the Appellate Court are not subject to review here. Ill. Rev. Stat. 1957, chap. 110, par. 92(3)(b).

Defendants contend that the same facts that support the answer to the special interrogatory determine that the plaintiff's intestate was guilty of contributory willful and wanton misconduct as a matter of law. On this ground the Appellate Court reversed the judgment and remanded the cause to the trial court with directions to enter judgment for defendants notwithstanding the verdict. However, plaintiff contends that the evidence, together with the reasonable inferences to be drawn therefrom, tends to establish the due care of the decedent, and therefore creates a question of fact for the jury.

We have carefully examined the record to determine if there is any evidence of due care on the part of plaintiff's intestate. There is evidence tending to prove that the driver of the car drove carefully toward the railroad tracks at a speed of 10 to 15 miles per hour; that she then slowed down to three or four miles per hour as she came to the crossing; that she looked to the south and saw no train, went upon the first or northbound track and then looked to the north and saw the approaching southbound train. The jury could have found from the evidence that the driver saw the southbound train on the second track in ample time to stop her car but instead stepped on the gas in an effort to beat the train across the track; and that the plaintiff's intestate, who did not know how to drive, sat quietly at the driver's side and did nothing to distract her or to interfere with her operation of the car. The foregoing permissible inferences are buttressed by the findings of fact in the opinion of the Appellate Court.

On the basis of these findings of fact and the resultant

permissible inferences, we cannot believe that all reasonable men would agree that the plaintiff's intestate was not in the exercise of due care and caution for her own safety, or that she was guilty of contributory negligence and willful and wanton misconduct. Contributory willful and wanton misconduct, like contributory negligence, becomes a question of law when it can be said that all reasonable minds would reach the conclusion, under a particular factual situation, that the facts did not establish freedom from such negligence or misconduct. Cf. *Tucker* v. *New York, Chicago and St. Louis Railroad Co.* 12 Ill.2d 532; *Briske* v. *Village of Burnham,* 379 Ill. 193.

Decedent, a nondriver, had no reason to doubt the ability and competency of the driver. Considering the poor visibility at the crossing, the jury could have found that the driver herself was in the exercise of due care until the last moment when she stepped on the accelerator to beat the train. It would have been supererogation to have advised the driver of the approach of the train, since she had looked to the north and had seen it while her car was still on the first or northbound track. The driver's car was then moving at a speed of three or four miles per hour and it was 13 feet plus the width of the northbound track from the second or southbound track. She had ample opportunity and time to stop her car and avoid the collision before reaching the southbound track.

Under such circumstances, we cannot say that plaintiff's intestate, as a matter of law, had the affirmative duty to warn the driver or to attempt to forcibly wrest control of the car from her at that last brief moment before the collision.

Defendants rely, as did the Appellate Court, on the decisions in *Opp* v. *Pryor,* 294 Ill. 538, *Pienta* v. *Chicago City Railway Co.* 284 Ill. 246, and *Valentine* v. *England,* 6 Ill. App. 2d 275, to support their contention that the facts

which established the willful and wanton misconduct of the driver must equally establish contributory willful and wanton misconduct of the passenger.

In *Opp,* a passenger in a motor vehicle sued a railroad for injuries resulting from a crossing accident. The driver testified that she did not see any warning light or hear any bell, as she approached the track, while a railroad employee testified that he waved a lighted lantern from the first car of the approaching train. A witness who was close by saw a lighted lantern on the second car, but not on the first. On that evidence, we held that the court could not say, as a matter of law, that there was no evidence of negligence on the part of the defendant railroad, or of ordinary care on the part of the plaintiff. However, we reversed and remanded because of errors in instructing the jury. This case is not decisive of the case at bar.

We also reversed and remanded in *Pienta* for various errors in the trial court, and at page 259 stated: "* * * it is also the duty of a mere passenger in the vehicle, where he has an opportunity to learn of danger and avoid it, to warn the driver of the vehicle of such danger." We held that the refusal of a tendered instruction which embodied these principles was error in view of the facts of the case. At page 252 of this opinion, we stated: "A court can only determine adversely to the plaintiff when no other conclusion can be reasonably drawn from the uncontradicted facts and from the evidence that is favorable to the plaintiff. 'There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise it is impossible to announce such a rule. The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances.' (*Stack* v. *East St. Louis Railway Co.* 245 Ill. 308.)"

While this case is pertinent, it is not determinative of the case at bar.

Neither do we find the decision of the Appellate Court in *Valentine* applicable to the factual situation in the instant case. There the court reversed the judgment for plaintiff holding that there was no evidence of plaintiff's intestate's freedom from contributory willful and wanton misconduct as a matter of law. Plaintiff's intestate was riding as a guest in defendant's truck. The defendant approached the railroad crossing when the warning lights were flashing, the bell on the train was ringing, the horn was sounding a warning, and vehicles were stopped and waiting at the crossing. In the words of the Appellate Court, at page 278, "* * * all in all defendant's driver had been warned in some four or five ways of the approach of the train, but that he heeded none and instead drove blindly onto the crossing and into a diesel engine." At page 280, the court further stated: "The facts and circumstances in evidence are relied upon as sufficient to make a case of willful and wanton conduct on the part of defendant. The same facts and circumstances cannot simultaneously absolve plaintiff's intestate of the same fault. The two persons were confronted by the same conditions, whatever they were, so that the same facts cannot be used to establish guilt of one and innocence of the other." The facts in *Valentine* are inapposite to the case at bar, and its language, which was appropriate as related to the factual situation under consideration, is too broad to be determinative of the particular facts of this case.

We believe that the following language stated in *Gillan* v. *Chicago North Shore and Milwaukee Railway Co.* 1 Ill. App. 2d 466, at pages 472 and 473 is applicable to the case at bar:

"The law fixes the same standard of duty for a passenger as for a driver of an automobile—the exercise of

reasonable care for his own safety, but the conduct which reasonable care requires of a passenger will not ordinarily, if in any case, be the same as that required of a driver because their circumstances are different. *Clarke* v. *Connecticut Co.* 83 Conn. 219. In *Dee* v. *City of Peru,* 343 Ill. 36, the passenger's duty was defined as follows: 'It is the duty of a passenger in a vehicle, where he has an opportunity to learn of danger and to avoid it, to warn the driver of such vehicle of approaching danger, and he has no right, because someone else is driving, to omit reasonable and prudent efforts on his own part to avoid danger.' This rule has never been construed to require action by a passenger when the driver exercising due care is aware of approaching vehicles or other danger." The Appellate Court then referred to *Hagen* v. *Bailus,* 283 Ill. App. 249, in which it quoted with approval from *Hermann* v. *Rhode Island Co.* 36 R. I. 447, as follows: " 'It cannot be said as a matter of law that such guest or passenger is guilty of negligence because he has done nothing. In many such cases the highest degree of caution may consist of inaction. In situations of great and sudden peril meddlesome interference with those having control, either by physical act or by disturbing suggestions and needless warnings may be exceedingly disastrous in its result.' " Also see: *International-Great Northern R. Co.* v. *Lucas,* (Texas), 123 S.W.2d 760, 764; 65 C.J.S. page 795, par. 153.

*Southern Pacific Co.* v. *Wright,* (9th. Cir.) 248 Fed. 261, is closely in point, factually. There the decedent Wright was a passenger in a truck driven by Tucker who approached a railroad crossing at about six miles per hour, slowed down to three or four miles per hour, looked south, then passed over the first and second tracks, and, as he was about to go upon the main track, looked to the north and saw a train between 200 and 400 feet away. He made a tardy effort to increase his speed to beat the train over the main track,

but was unsuccessful and the train hit the truck, killing Wright. In considering the defense of contributory negligence, the court, at page 263 quoted from *Pyle* v. *Clark* (C.C.) 75 Fed. 644, as follows: " 'It is a matter of common experience that passengers in a vehicle trust to the driver to avoid the ordinary dangers of the road, and I do not know of any principle of law which requires them to tender advice, unless conscious of the driver's ignorance or want of care,' " and further stated at pages 263 and 264: "It is not a case where the passenger, knowing the danger, voluntarily takes the risk, as where he rides in the night time over a perilous road or without lights. There was no circumstance to warn Wright of danger, or to suggest the need of assistance, or the advisability of cautioning Tucker. True, the railroad tracks were there, and they always warn of danger; and he may have known that the passenger train was about due. But until he had some reason to suspect that Tucker was incompetent or careless, or was unable safely to operate the truck, he not only had the right, but it was his duty to assume that he would not rashly or carelessly go into peril. Generally, it is the duty of the passenger to sit still and say nothing. It is his duty, because any other course is fraught with danger. Interference, by laying hold of an operating lever, or by exclamation, or even by direction or inquiry, is generally to be deprecated; in the long run, the greater safety lies in letting the driver alone. And there is nothing in the circumstances here suggesting an exception to the rule. Tucker was sober, awake, and had the truck completely under control; and, so far as we know, he had shown no disposition to be reckless or venturesome. It was a bright morning, and the view of the track was unobstructed, so that in an instant he could glance either way and see an approaching train. There were no other sources of possible danger requiring vigilance, and plainly Wright's assistance as a lookout was not required. In short, it was a case where

a reasonably competent, vigilant driver needed no assistance, and would in the long run be better off if left alone."

In the case at bar, we think a jury could well have found that the driver was in the exercise of due care, was well aware of the impending danger, and that her willful and wanton misconduct came too late for plaintiff's intestate to take any action to prevent the collision. It is evident that all reasonable minds would not agree that plaintiff's intestate was guilty of both contributory negligence and willful and wanton misconduct for taking no action under these circumstances. Indeed, the highest degree of prudence might well have dictated that the decedent, a nondriver, sit quietly as the driver slowly approached the obstructed intersection. *Berg* v. *New York Central Railroad Co.* 323 Ill. App. 221, 230; affd. 391 Ill. 52.

The question of whether plaintiff's intestate was in the exercise of due care and was free from contributory negligence and willful and wanton misconduct was for the jury, and it was error for the Appellate Court to enter judgment for defendants notwithstanding the verdict. *Pennington* v. *McLean,* 16 Ill.2d 577; *Donoho* v. *O'Connell's, Inc.* 13 Ill.2d 113.

However, since the Appellate Court, because of its conclusion, did not reach the other alleged errors, the cause must be remanded. (*Arvidson* v. *City of Elmhurst,* 11 Ill.2d 601.) The cause is accordingly remanded to the Appellate Court for the First District, with directions to affirm the judgment of the trial court if no further reversible error is found.

*Reversed and remanded, with directions.*