Frank Bezemek, Appellee, v. Louis Panico and Elmer W. Kaniuk, Appellants.

Gen. No. 40,668.

Opinion filed October 25, 1939.

HAROLD A. FEIN, of Chicago, for appellants; EDWARD S. ALTERSOHN, of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellee.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Defendants Louis Panico and Elmer W. Kaniuk bring this appeal from a judgment which was entered November 7, 1938, in the circuit court on the verdict of a jury for the sum of $10,000 in favor of plaintiff for personal injuries alleged to have been received by said plaintiff in an automobile accident.

The complaint alleges that the plaintiff was employed by the defendant Panico as a musician in his orchestra and that there was an agreement by defendant Panico to furnish transportation for plaintiff.

The complaint further alleges:

1. Negligence; and

2. Wilful and wanton conduct in the operation of defendant Panico's automobile by defendant Kaniuk, as his agent.

Defendants' answer admits the employment of plaintiff upon an hourly basis to work during the evenings only; denies an agreement to furnish transportation to plaintiff; admits ownership and operation of the automobile for the transportation of instruments and baggage; and denies that plaintiff, at the invitation, direction or request of the defendants, rode as a passenger in the automobile; denies all charges of negligence or wilful and wanton conduct and denies that plaintiff was in the exercise of due care and caution for his own safety.

Plaintiff's theory of the case is that he was riding in an automobile truck in Arkansas and that the driver of the truck drove the car so negligently that it left the road and plaintiff was injured as a result thereof; that the conduct of the driver of the truck, who was an employee of the other defendant herein, was negligent and also wilful and wanton.

Defendants' theory of the case is that plaintiff failed to prove that he exercised due care and that the proof by defendants of contributory negligence on the part of plaintiff constituted a good defense in the absence of proof of wilful and wanton conduct.

The evidence shows that the plaintiff Bezemek and the defendant Kaniuk were employed as musicians by the defendant Panico in the latter's orchestra; that on August 28, 1935, Kaniuk was driving Panico's automobile truck which was about the size of a passenger car, carrying instruments and baggage of the members of the orchestra, from Pine Bluff, Arkansas, to Joplin, Missouri; that plaintiff was alongside Kaniuk in the driver's seat at the time of the accident; that Kaniuk drove the truck without extra compensation and at his own request.

The evidence further shows that in addition to the truck which was used to carry baggage and instruments, Panico had two passenger automobiles for the members of the band, in which plaintiff could have been

a passenger although there was no agreement on the part of defendant Panico to furnish transportation to plaintiff.

The evidence further shows that plaintiff was not directed or requested to ride in the automobile truck and did so of his own volition because of his friendship with defendant Kaniuk; that plaintiff received $7 for each night's work of four hours and was not employed by the week and did no work during the day.

The evidence further shows that the accident occurred about 3:00 p. m.; that the weather was clear and hot with the temperature about 90 degrees; that defendant Kaniuk had driven the automobile for about two hours after lunch; that plaintiff was reclining in the seat, sleeping for almost 40 minutes before the accident occurred, in fact, that he slept through the entire occurrence of the accident, and only awakened after the automobile had turned over, at which time his entire body was out of the truck and his legs were pinned under the automobile; that there was no eyewitness to the accident other than the defendant Kaniuk; plaintiff was asleep.

Kaniuk, one of the defendants, was called as an adverse witness by plaintiff and he testified that frequently when plaintiff rode with him, as on this occasion, he would, while riding, extend his legs out of the door window and sleep in that position; that on a number of occasions he remonstrated with plaintiff and warned him of the danger, but that his warnings were not heeded; that prior to the accident plaintiff assumed a diagonal position to the door of the car, slouched down with his feet hanging out of the window.

On direct examination plaintiff testified, "I was reclining back in the seat asleep." When asked where his feet and legs were, he answered: "I am sure they were in the automobile." When asked if they were out of the window, he answered: "After I woke up with the truck on me, they were." When his counsel stated,

"I mean before you went to sleep?" he replied, "Not that I know of."

On cross-examination plaintiff said that he was not awake while the truck was turning over so that he could not be conscious of or know what happened, or what his position was; that when he first awoke his legs were under the car and his body outside the car; that the cab door was over his legs, and that the glass panel of the door was down.

Testimony as to how the accident actually happened was given by Kaniuk who was driving the automobile truck, and he stated that he was approaching an upgrade about 150 feet long, at a speed of about 35 or 40 miles as he reached the bottom of this hill; that the road was straight; that by the time he reached the top of this hill his speed was reduced to 28 to 30 miles due to the upgrade; that he had vision over the crest of the hill and about 10 feet before he reached the crest, at which time he saw a car approaching him from the other direction; that the top of the hill was level for about 8 feet before another decline; that the road on the decline was straight for about 50 to 60 feet, at the bottom of which a curve commenced to the left; that from the top he could see the entire curve at the bottom of the hill.

Kaniuk further stated that he first saw the approaching automobile at about the middle of this curve, about 50 to 75 feet away, with his own car in the right traffic lane and the center line of the road visible to him; that his right wheels were inside the edge of the road, the edge being visible; that the shoulder was not distinguishable from the roadway; that the approaching car was in the center of the road, straddled about one-half over the center line; that when he was about 10 or 15 feet away from this car, of necessity he swerved to the right while on the downgrade and only after he had traveled about 20 feet from the top of the hill; that his speed was about 25 miles; that he was not pushed off

the pavement but swerved to avoid a head-on collision and that at the time the approaching automobile was only a car length away. He further stated, "There was nothing for me to do but either take one way or the other to avoid a head-on collision."

Kaniuk further stated that the other automobile did not slow up and did not stop; that as his front wheel went off the pavement onto the shoulder, he had the feeling that he was on a soft shoulder; that his rear right wheel also went on the shoulder; that his left wheels did not leave the pavement; that he traveled about six or seven feet in that manner, on the shoulder and his machine slowed up because he used his foot brake; that because of an embankment on the other side of the shoulder, he immediately directed his car back on the pavement and he had no difficulty in getting his right front wheel on the pavement, but he sensed the difficulty in getting the right rear wheel on the road and he felt that he was skidding along the edge of the road. When asked what effort he made, if any, to get that rear wheel on the road, he answered: "It happened too fast and there was not time for effort at all." He further stated that he accelerated the car, and that it skidded about seven or eight feet before it turned over; that he felt a little bump in the soft shoulder had caught the rear wheel and the truck toppled over.

The evidence further shows that Kaniuk, the driver of the truck was not injured except for a few slight scratches. The plaintiff, Frank Bezemek, however, received a serious permanent injury consisting of broken bones of his leg and ankle which had been apparently crushed when the automobile truck turned over.

As before stated there was a joint count of negligence and also wilful and wanton negligence, and usually a jury of laymen do not understand the distinction. In the case of *Nosko v. O'Donnell*, 260 Ill. App. 544, the first division of this court in its opinion defined the different classes of conduct which might be regarded as

wilful and wanton, as follows: ''(1) where defendant has inflicted an intentional injury; (2) where defendant has failed to exercise ordinary care when a known and extraordinary danger is imminent (*Walldren Express & Van Co. v. Krug*, 291 Ill. 472); (3) where a defendant through recklessness, regardless of the danger to another, has carelessly failed to discover an extraordinary and impending danger which could have been discovered by the exercise of ordinary care (*Brown v. Illinois Terminal Co.*, 319 Ill. 326); (4) carelessness so gross in its nature as to indicate a mind reckless and regardless of consequences (*Bremer v. Lake Erie & Western R. Co.*, 318 Ill. 11). . . .

''The instruction and the interrogatory both tended to confuse the jury in regard to the issues of fact which they were required to decide. We have already stated that the legal distinction between actions for mere negligence and actions for wilful and wanton conduct is clear and fundamental. A declaration may properly include counts for both causes of action, but in such case the instructions to the jury should clearly and plainly point out the distinction between these causes of action, and unless this is done confusion is certain to result.''

In the instant case instruction No. 9, which is criticized, reads as follows:

''The jury are instructed that in determining the question of wilful and wanton conduct of the defendants as charged in the complaint, if any, on the part of the defendants, you are to take into consideration the law of the State of Arkansas, pertaining to the driving of motor vehicles. You are instructed that the law of the State of Arkansas is to the effect that no person may drive a motor vehicle upon any public highway in the State of Arkansas at a speed greater than is reasonable and proper having regard to the traffic and the use of the way.'' In this connection, even if the law of Arkansas were violated, we do not think this proves

defendant was guilty of wilful and wanton negligence. Such an instruction as the one just quoted could result in nothing but confusion. We have carefully gone over this record and fail to find any evidence which supports the charge of wilful and wanton conduct. While driving through a strange country and in order to avoid a collision with an automobile approaching from the opposite direction, the defendant who was driving the truck, pulled to one side and in doing so the automobile skidded onto a sandy shoulder of the road and in endeavoring to get the automobile back onto the paved portion of the road, the rear wheels skidded and the automobile truck toppled over. This may or may not have been negligence on defendant's part, but we cannot find any evidence of wilful and wanton conduct on the part of the driver of the automobile truck, and the court should have instructed the jury to this effect upon the motion which was made. The court should not have selected one portion of the evidence, such as the statute of Arkansas and directed the jury to consider it as tending to prove any particular issue involved. All of the evidence which was admitted should have been considered by the jury in connection with the entire case.

The distinction between wilful and wanton negligence and mere negligence is not always understood by the laymen who compose the average jury and care should be exercised to explain the difference, so that the jury may properly consider the facts presented in arriving at their decision. That was not done in this case.

Other questions are presented for our consideration, but as this case must be tried again we shall not discuss them at this time.

For the reasons herein given the judgment of the circuit court is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

HEBEL and BURKE, JJ., concur.