Walter J. Kelly, Minor, by Herbert J. Kelly, His Father and Next Friend, Appellant, v. Robert R. Burtner, Appellee.

Gen. No. 41,554.

Opinion filed April 28, 1941.

JOHN A. BLOOMINGSTON, of Chicago, for appellant.

CHARLES E. GREEN, of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action for damages for personal injuries and upon trial by jury, at the close of plaintiff's evidence, there was a motion by defendant for an instruction

of not guilty as to subparagraph "(f)" of the complaint, which charged defendant with wanton and wilful conduct. The motion was granted, the instruction given. Further evidence was taken. At the close of all the evidence the jury returned a verdict for defendant on which the court entered judgment, from which plaintiff appeals.

The only alleged error argued is instructing a verdict for defendant on the wilful and wanton charge. The question for decision is whether at the close of plaintiff's evidence the jury could have reasonably found defendant guilty of the wilful and wanton charge.

November 9, 1937, plaintiff, a boy nine years of age, was severely injured when struck by an automobile driven by defendant at or near the intersection of Lawrence avenue and Wolcott street in Chicago. Lawrence avenue runs east and west. It is intersected by Wolcott street, which runs north and south. Double street car tracks were in Lawrence avenue. Westbound cars ran over the north tracks, eastbound over the south tracks. On the southwest corner of the intersection was a safety zone or island made of concrete raised about 6 inches above the surface, about 4 or 5 feet wide and about 60 feet long. At the west end of this island was an abutment. Lawrence avenue is 54 feet, Wolcott street 33 feet wide. The main entrance to a Sears Roebuck store was on the north side of Lawrence avenue, 150 feet west of the building line on the northwest corner of the intersection. On the southwest corner of the intersection was a school and playground with a solid fence around it about 2 feet high. There were flicker lights on both sides of the intersection. One of these was about 105 feet east of the curb line of Wolcott street, which said "Slow, Danger." The evidence also tends to show there was a similar sign at about the same distance west of the intersection.

On the afternoon of the day of the accident plaintiff had been to the office of Dr. Nimtz, a dentist. He got through and was on his way home. He knew this corner well. He walked alone from the south curb to the safety island. A street car (eastbound) was standing there. Passengers were getting on and off. Plaintiff had his school books in his hand. He started to go around behind the street car. He stood looking east, he says, before he went on to the westbound track. He says when he first looked from behind the street car he saw autos coming from the east. He could, he says, see they were going straight west across the path in which he was moving. One of these struck him. He does not remember which. When he awoke he was in the hospital.

Plaintiff's witnesses (Milton Visovcatti, who was last to board the street car and was standing on the step of the back platform; Cordis Cobb, a heating engineer for Sears Roebuck & Co., who was on Lawrence avenue about 20 or 25 feet west of Wolcott street looking in the window of a store; Carl G. Johnson, an iron worker who was on the rear platform of the street car right at the stop; and Lester Peters, who was on the sidewalk in front of the Sears Roebuck store about 10 or 12 feet east of the middle entrance) all agree that the first they knew of the accident was through hearing the impact of the car when it struck plaintiff. Mrs. Olga Streccius, who at the time of the accident was on the north side of Lawrence west of Wolcott street at the Sears entrance, said the first she heard was the brakes and that she looked up and saw the boy come sliding on his stomach for 15 feet, sliding west. She walked out to look at the injured boy. A man had him in his arms. She saw plaintiff lying on the pavement between the two tracks. These witnesses agree no horn was sounded. Defendant testified he had a horn but did not sound it. The time was about 5:30 p.m., and it was getting dark.

Defendant was called as an adverse witness and testified that he did not see any "slow" signs east or west of Wolcott street on Lawrence; that he entered Lawrence from east of the viaduct; that it was a busy street and he was returning home from his work, driving a 1933 Plymouth sedan; that he was going about 20 miles an hour. Mr. John Speer was riding with him. The car had brakes and going at that speed he could stop it in 20 or 25 feet. He was looking out as he went west and saw the street car stopped at the safety island. He had a clear path across Wolcott street and crossed at a speed of between 15 and 20 miles per hour, but he was not watching the speedometer. He was going west with his right wheels barely to the south, maybe 5 inches, of the north rail of the westbound track. He was straddling the south rail. As he passed the street car his left wheels were in the space between the south rails of the west bound tracks and the side of the street car. There were cars parked at Sears. They were pulling in and out. When he hit the boy the front of his car was about 5 feet past the street car. His radiator cap hit plaintiff and he thought there was also a mark on the shell to the right of it. He first saw the boy perhaps a little bit to the right of his left fender headlight and about 5 feet from the auto. It was his impression plaintiff was running, and such also was the impression of other witnesses who saw him as he moved from the south side of the street to the safety island and around the car. The boy was put in defendant's car. Defendant took him to the hospital. Defendant made a statement to the police in which he said: "When I was even with the east bound street car it started up, and as I was 15 to 20 feet west of the abutment of the safety island on the south side of Lawrence, west of Wolcott I noticed a child right in front of my car, I put on my brakes, the child was hit by the front." Defendant said he would not have told the police that the car

was moving unless he believed it to be true; that he might have been mistaken but that was his impression at the time. He did not think he was 15 feet or so to the west of the back end of the street car when he hit the child. The witness said he had meant by the statement made that he saw the child when he was 15 to 20 feet west of the abutment. His eyesight and hearing were good. The street was dry. Speer, the passenger in his car, was a friend and fellow employee.

The whole of the evidence is to the effect that plaintiff crossed the street not at the crossing, as he had been told to do, but some distance from it; that he crossed from the south north to the safety island and then went around the street car just as it was starting up. The jury who heard the evidence and the court who passed on plaintiff's motion for a new trial were manifestly of the opinion either that plaintiff was guilty of contributory negligence or that there was no negligence as alleged.

The question here is whether the charge of wilful and wanton conduct should have been submitted to the jury. The leading case is *Walldren Express & Van Co. v. Krug*, 291 Ill. 472, where, affirming a judgment, the Supreme Court said, quoting from *Chicago City Ry. Co. v. Jordan*, 215 Ill. 390:

"Where there is a particular intention to injure, or a degree of willful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes willful or wanton."

In other cases the Supreme Court has often said in substance that whether the negligent conduct of a defendant amounts to wilfulness or wantonness is a question of fact to be determined by the jury. *Brown v. Illinois Terminal Co.*, 319 Ill. 326; *Fickerle v. Seekamp*, 274 Ill. App. 310.

In *Streeter v. Humrichouse*, 357 Ill. 234, the Supreme Court also said that in passing upon a motion to direct

a verdict on this question the rule was that, if, when all the evidence was considered, with all reasonable inferences drawn from it in its aspect most favorable to the party against whom the motion is directed, and there was a total failure to prove the one or more necessary elements of the charge, the motion should be allowed; that whether an act was wilful or wanton would depend upon the circumstances in each case.

In *Provenzano v. Illinois Cen. R. Co.*, 357 Ill. 192, the Supreme Court said:

"In order to constitute wilful and wanton misconduct the injury must either have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a reckless disregard for the safety of others."

In the quite recent case of *Greene v. Noonan*, 372 Ill. 286, the Supreme Court considered the question of whether the trial court committed prejudicial error in refusing to withdraw a charge of wilful and wanton conduct from the jury by instructing them to find defendants not guilty. The court said (p. 290): "The rule, often announced, is that the question whether an injury is the result of wilful and wanton conduct is one of fact to be determined from the evidence, yet, where there is no evidence tending to support such charge, there is no question of fact to submit to a jury and a motion to direct a verdict on those counts presents a question of law for the court."

In *Nosko v. O'Donnell*, 260 Ill. App. 544, this court, reviewing the authorities, held that proof offered tending to show that a defendant was driving his truck at a speed of 25 miles or more per hour, where no evidence was offered tending to show such speed under the circumstances was unusual, was not sufficient to sustain a charge of wilfulness and wantonness.

The evidence in this record at the time defendant's motion was made, we hold, failed to disclose facts from which the jury could reasonably infer wilfulness

and wantonness. The evidence as to speed is to the effect that defendant was driving at 15 to 20 miles per hour. All the other evidence tends to show that plaintiff crossed the street not on the crosswalk (as he had been directed by his parents and teachers to do) but walked or ran across the street to the safety island and passed around the rear of the street car in the path of defendant's automobile, where he was hit. It is apparent that as defendant approached the scene of the accident the street car would prevent his seeing plaintiff as he approached. The accident is deplorable and resulted in serious injury, but there is nothing in this record from which a jury could reasonably infer that defendant was driving with a reckless disregard for the safety of others. We hold the court did not err in granting defendant's motion for an instructed verdict as to this charge at the close of the evidence for plaintiff.

The judgment will therefore be affirmed.

*Judgment affirmed.*

McSURELY, J., concurs.

MR. PRESIDING JUSTICE O'CONNOR specially concurring: I agree with what is said in the foregoing opinion but I go farther and say that since the jury found defendant was guilty of no negligence and since no argument is made in the briefs that such finding is unwarranted, it is obvious defendant could not be guilty of wilfulness or wantonness. The term "wanton" expresses a reckless disregard of consequences. *Schoenbacher v. Kadetsky,* 290 Ill. App. 28. It connotes a greater degree of negligence than ordinary negligence. *Walldren Express & Van Co. v. Krug,* 291 Ill. 472. If defendant was not guilty of the lesser offense, obviously he was not guilty of the greater.