Mildred Allene Greenlee, Individually and as Administratrix of the Estates of Mikel Greenlee, Deceased, and Vernon Greenlee, Deceased; Mildred Allene Greenlee, as Mother and Next Friend of Richard Glen Greenlee, a Minor, and Edgar Greenlee, Plaintiffs-Appellants, v. John G. Shedd Aquarium, a Corporation, and William J. Barry, Defendants-Appellees.

Gen. No. 48,110.

First District, Third Division.

June 28, 1961.

Samuel Nineberg, of Chicago, for appellants.

Baker, McKenzie & Hightower, of Chicago (John C. McKenzie and Thomas F. Bridgman, of counsel) for appellees.

ON REHEARING.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiffs appeal from a judgment on a verdict of not guilty in a personal injury suit growing out of a collision between a passenger automobile owned and driven by plaintiff Edgar Greenlee and a truck owned by defendant Shedd Aquarium and driven by defendant Barry.

The accident occurred on Route 20, a two-lane highway, about two miles east of Elizabeth, Illinois, on Sunday afternoon, November 3, 1957. The weather was fair, the highway was dry and visibility was clear. Route 20 is divided by a line down the center marking the respective east and westbound lanes. At the place where the accident occurred the road runs along the top of a narrow ridge, about a mile and a half long. It is a winding, hilly road, but as to the precise point of impact, there is testimony that the road was straight. There is a substantial gravel shoulder on either side. The collision occurred near the west end of the ridge. At that end the road goes downhill and there is a curve.

Plaintiff Edgar Greenlee, an automobile mechanic 32 years old, was driving his 1952 Lincoln car east on his way home from a picnic with his family con-

sisting of his wife and four children. Defendants' vehicle was a 3½ ton truck equipped for the conveyance of specimen fish for the Shedd Aquarium. It was driven by defendant Barry, a collector for the Aquarium, and riding with him was William Paul Braker, assistant curator for the Aquarium. They had left Chicago early that morning and were driving west to a point in Iowa to gather some specimens. Greenlee was going uphill and was at or near the curve to which we have referred when the left front side of his car collided with the left front side of the truck. Plaintiffs' car went over a ditch, through a fence and landed in a field about 600 feet from the point of impact. Two of plaintiffs' children were killed, Edgar Greenlee's left arm was amputated, and injuries were sustained by his wife and one of the surviving children. The truck went about ten feet and stopped in its right lane, parallel with the center line.

▉ It is argued that the verdict and judgment are against the manifest weight of the evidence. There is no merit whatsoever in this point. On the contrary, the manifest weight of the evidence supports the verdict of not guilty, and the only question is whether the record shows reversible error. The principal point made by plaintiffs is that the court erred in sustaining defendants' motion to strike the wilful and wanton count of the complaint. On that point it is necessary that we review the evidence in some detail.

Edgar Greenlee testified that as he was going uphill and entering the curve, he was driving between 30 and 35 miles per hour; that he was on the proper side of the roadway; that after he saw the truck he was looking at the road and that when he saw the truck again, it had come into the curve, at which time they were 25 to 30 feet apart and "it looked like he was about half way across the center line on my side. . . . *From then on it was almost a blank.* . . . I touched my brakes . . . and jerked the steer-

405

ing wheel of the car . . . to the right. My left front fender and his left front fender [came together]; . . . [the impact took place] on my side of the road." (Emphasis supplied.) On cross-examination he testified that on the way to the picnic grounds he drove the car at 60 miles an hour and coming back he went from "60 to 45–45 to 60" and that "the nearest point I went 50 coming back to Chicago was before I came to Elizabeth." *That is the only factual account of the accident given on behalf of plaintiffs.* Mrs. Greenlee remembers nothing of the accident or what immediately preceded it. She does remember passing a car around Elizabeth. It was going very slowly, "between 15 and 20."

Edgar Greenlee's story is refuted by the overwhelming weight of the evidence introduced on behalf of defendants. Barry testified that he had driven up to 45 miles per hour that day and that at no time had he driven the truck over the center line. He first observed plaintiffs' car when it came around the curve about 125 feet away from him. The truck was on a straight stretch of road and plaintiffs' car was tilted toward the outer side of the curve to its left; half of it was over the center line into the westbound lane. It appeared to Barry that the driver was attempting to maneuver his car back into the eastbound lane. Upon observing the approaching car, Barry *applied his brakes as hard as he could.* They were in good working order. The truck stopped rather abruptly in the westbound lane, parallel to the center line. No portion of the truck was over the center line. He estimated the speed of plaintiffs' car at approximately 60 miles an hour.

William Paul Braker testified that he observed plaintiffs' car when it was approximately 150 feet west of defendants' truck; that plaintiffs' car was traveling in excess of 55 to 60 miles an hour and that when it had traversed half the curve, approximately three-

fourths of the car was in the westbound lane. It then began laboriously and gradually to veer into the eastbound lane. The truck remained in the westbound lane at all times. Part of the Greenlee car was in the westbound lane at the time of the impact. The truck stopped within 10 feet after the impact. Braker felt the brakes being applied by the driver. There was no change in the direction of the truck.

In addition to Barry and Braker, there were four eyewitnesses for the defense, traveling in two cars behind the truck—Mr. and Mrs. Bertis L. Hubb and Mr. and Mrs. Mernice Toepfer. They substantially corroborate Barry and Braker. Mr. Hubb had followed the truck for about a mile and a half and estimated its speed at 40 miles an hour. He estimated the speed of the Greenlee car at approximately 80 to 90 miles an hour. Mrs. Hubb estimated the speed of the truck at 30 to 35 miles an hour and the speed of the Greenlee car at 60 to 70 miles an hour. Mrs. Toepfer estimated the speed of the truck at 30 to 35 miles an hour and the speed of the Greenlee car at between 60 and 65. Mr. Toepfer estimated the speed of the Greenlee car at about 60 to 70 miles an hour. All of them testified that the truck was in its proper lane on the right hand side of the roadway. Four of them testified that the Greenlee car was in the wrong lane.

Another witness for the defense, Leo Snyder (not an eyewitness, but an important one) testified that he was driving east with his wife and that he first noticed the Greenlee car as he was going through Elizabeth. It passed him outside of Elizabeth in an "S" curve just before reaching the ridge in question. He testified that he, Snyder, was going 45 miles an hour and that the Greenlee car was going approximately double that speed when it passed him. He further testified that the Greenlee car after passing him passed another car in front of him and then cut short

because there was an oncoming car. Snyder did not see the actual collision but saw the Greenlee car go through the fence on the ridge following the collision. The truck was parallel with the center line. Snyder's wife was reading a book and did not see the Greenlee car, but was conscious of the roar of an automobile as it passed them on the curve. The testimony of Snyder, going in the same direction as the Greenlee car, is very convincing proof of the high speed at which Greenlee was driving as he approached the scene of the accident.

Thus seven witnesses, five of them wholly disinterested, support the defense. Their estimate of Greenlee's speed varies from 55 to 90 miles an hour. Against this is Edgar Greenlee's testimony that he was going 30 to 35 miles an hour and that defendants' truck was on the wrong side of the road. This is the testimony of a man whose mind became blank and who seconds afterward was terribly injured and unconscious. The jury believed defendants' witnesses and so did a competent, experienced trial judge.

At the close of plaintiffs' evidence, defendants moved to strike the wilful and wanton count. The court reserved its ruling and at the close of all the evidence, sustained the motion. In a previous opinion we held that this was error. We reached that conclusion on the basis of the decisions holding that on such a motion only that evidence could be considered which was most favorable to plaintiffs. We isolated that evidence and then considered it in connection with the attenuated distinction now made by Illinois courts between wilful-wanton conduct and negligence. Hering v. Hilton, 12 Ill2d 559, 563, 147 NE2d 311, 314; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 583, 69 NE2d 293, 300; Foster v. Bilbruck, 20 Ill App2d 173, 180, 155 NE2d 366, 370. On that basis, we reached the conclusion that the very slight evidence

supporting plaintiffs' case was sufficient to sustain the wilful-wanton count.

On rehearing, defendants made the point that the ruling of the court with respect to the wilful and wanton count, even if it were error (which they argue it was not) did not affect the outcome of the case and therefore is not reversible error. Baker v. Baker, 412 Ill 511, 519, 107 NE2d 711, 715; Lindroth v. Walgreen Co., 407 Ill 121, 136, 94 NE2d 847, 854; Loucks v. Pierce, 341 Ill App 253, 260–61, 93 NE2d 372, 376. Their argument is that the jury having found defendants not guilty as to all the plaintiffs, including the passengers, must thereby have concluded that defendants were not guilty of any negligence and that it was Edgar Greenlee's negligence which was the sole cause of the accident. The jury had been instructed that "no claim was made by defendants that such occupants [meaning the passengers] were guilty of contributory negligence." The issue of contributory negligence was limited solely to Edgar Greenlee.

The jury was further instructed that even though the driver of the Greenlee car was negligent, such negligence could not be imputed to the passengers. In still another instruction the jury was told that as to the passengers in the car, the issue was whether defendants were negligent and the negligence caused the injury. Only one of the defendants' instructions referred to the possibility of finding defendants not guilty as to all plaintiffs, and that instruction specifically stated that they were to so find only if from the evidence it appeared that the *sole proximate cause* of the collision was the failure of Edgar Greenlee to exercise reasonable care. The instructions were fair and correct. They leave no room for doubt that the jury's verdict meant that there was no negligence attributable to defendants and that Edgar Greenlee's negligence, and his alone, caused the accident.

■ The advantage in having a wilful and wanton count submitted to the jury was that Edgar Greenlee could recover thereon even if he were guilty of contributory negligence. Inasmuch as the jury had found that his negligence, *and his alone,* caused the injury, the elimination of the wilful and wanton count harmed no one. It is our conclusion that defendants' argument is sound. We are also of the opinion that a re-trial can only result in another verdict of not guilty. Failure to submit the wilful and wanton count to the jury was not reversible error.

■ Error is charged with respect to the giving of a number of instructions on behalf of defendants. The criterion to be applied, as stated by our Supreme court is "whether the jury was fairly, fully and comprehensively informed on the relevant principles, considering the instructions in their entirety." Saunders v. Schultz, 20 Ill2d 301, 314, 170 NE2d 163, 170. The instructions given by the trial court comply with this standard. It is true that the instruction designated Number 1, given on behalf of defendants, is very long, comprising as it does a statement of the respective theories of the case and a group of cautionary instructions, paragraphed but not confined to separate sheets. Defendants undertook to follow this practice, which was approved in Hanchett v. Kimbark, 118 Ill 121, 7 NE 491, 495, where the court said, at page 132:

> "That the charge is somewhat voluminous we readily concede. The court, however, instead of following the practice which usually obtains, of giving a large number of isolated instructions for each of the parties, gave to the jury in one charge all the law which it was thought the facts of the case demanded, and we are not prepared to say that there is any well founded objection to a practice of this kind, but, on the other hand, we think it a good one."

410

It is argued by plaintiffs that this instruction is subject to the same criticism as that made by this court in Signa v. Alluri, 351 Ill App 11, 113 NE2d 475. The instruction in question does not have the faults complained of in the latter case. There, in setting forth the theory of his case, the plaintiff followed the language of his complaint. We pointed out that this was in effect sending to the jury a complaint, couched in all the forensic and partisan language characteristic of such pleadings, asserting and reasserting the charges against the defendant. We stated that the instruction tended to emphasize the plaintiff's charges of liability by placing in the court's mouth substantially the entire charge of the complaint. The instruction here in question does not include any such language with respect to defendants' innocence. On the contrary, both their case and plaintiffs' case were stated fairly. The instruction taken as a whole is not subject to criticism, except for its length. We stated in our first opinion in the instant case that with the inclusion of the cautionary instructions, it made for a very long document and that it would have been preferable to separate them, but we do not regard this as reversible error, particularly in the light of our conclusions with respect to the facts in this case.

Moreover, it does not appear from the record itself that plaintiffs asserted the grounds now urged against the instructions at an instruction conference, nor did they assert them in a motion for a new trial. Under Section 67(3) of the Civil Practice Act it is provided: "The court shall hold a conference with counsel to settle the instructions and shall inform counsel of his proposed action thereon prior to the arguments to the jury. . . ." Ill Rev Stat, ch 110, § 67(3) (1959). The purpose of that section of the act was to provide as nearly as possible against error in instructions which prior to that time had so frequent-

ly resulted in mistrials. Interpreting this in Onderisin v. Elgin, J. & E. Ry., 20 Ill App2d 73, 77–78, 155 NE2d 338, 341, a case cited with approval in Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163, the court held that it was the duty of counsel to cooperate with the trial judge to the end that the jury may be properly instructed. To that end counsel are required to state their specific objections to instructions at the time of conference and may not urge the error for the first time in a post-trial motion nor on appeal. Counsel must preserve the specific objections in the conference, on post-trial motion, and in the record.

█ Sec 68.1(2) of the Civil Practice Act provides that post-trial motions "must contain the points relied upon, particularly specifying the grounds in support thereof. . . . A party may not urge as error on review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion." Ill Rev Stat, ch 110, § 68.1(2). Plaintiffs, however, presented a stipulation in which it was agreed between them and defendants that at the time the trial court considered the instructions, a conference was had in chambers at which defendants tendered certain instructions which were objected to by plaintiffs, all of said instructions being made a part of the Report of Proceedings. The specific objections, if any were made, were not stipulated and were not included as grounds for new trial in the post-trial motion. In our opinion the stipulation does not exonerate plaintiffs from showing by the record that they made specific objections and does not excuse the failure to include their objections to the rulings thereon as grounds for new trial.

We find no reversible error in this case.

Judgment affirmed.

McCORMICK, P. J. and DEMPSEY, J., concur.