DOROTHY GORDON, Administrator of the Estate of Edgar Gordon, deceased, Plaintiff-Appellant, *v.* J. L. MANTA, INCORPORATED *et al.*, Defendants-Appellees.

(No. 55137;

First District—January 19, 1972.

DIERINGER, J., dissenting.

A. Denison Weaver, of Chicago, (Robert R. Lanham, of counsel,) for appellant.

Querrey, Harrow, Gulanick & Kennedy, of Chicago, (John T. Kennedy, of counsel,) for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff brought this action as administrator, to recover damages arising out of the death of Jack Gordon. He was allegedly shot and killed on the premises of J. L. Manta, Inc. [hereinafter referred to as Manta], by its employee, defendant Arcell McGhee. The case went to the jury on two counts, charging defendant Manta with negligence and charging both defendants with assault and battery. The jury rendered a verdict in favor of defendant on the negligence count and a verdict in favor of plaintiff against both defendants on the assault and battery count, in the amount of $17,500.

The jury was also given the following special interrogatory: "Do you find that any force used by defendant Arcell McGhee on the occasion in question was used in self-defense as defined in these instructions?" The jury returned an affirmative answer to this special interrogatory, along with its verdict in the amount of $17,500 on the assault and battery count. The trial court set aside the general verdict for plaintiff because it was inconsistent with the jury's answer to the special interrogatory and entered judgment for the defendants on both counts. From this judgment plaintiff appeals. No questions are raised on the pleadings.

Plaintiff contends that it was error to submit defendant's special interrogatory to the jury because it was ambiguous, misleading and not directed to an ultimate fact, and that the special finding was consistent and reconcilable with the general verdict. The plaintiff also contends that the court erred in giving a certain other instruction and in admitting certain evidence purporting to be a blood alcohol test of decedent's blood, in that no proper foundation was laid.

The record discloses that the verdict for plaintiff was on plaintiff's

amendment to the amended complaint which pleaded an assault with a deadly weapon inflicting injuries to the decedent, causing his death. The occurrence took place in the theatre lobby about 10:00 P.M., on May 17, 1964. There was no direct testimony by any witness as to the actual shooting or the circumstances that occurred at that time. Joseph Thomas, employed by the theatre as a guard, was watching a movie when he heard two noises which sounded like firecrackers. He went out of the inside lobby where he observed Jack Gordon lying flat on his back. Arcell McGhee, as assistant manager of the theatre, was standing next to a staircase and handed him a .38 snub nose pistol. When the police came he observed them taking a knife out of Jack Gordon's hand. He related that there had been many previous disturbances at the theatre because it was a difficult neighborhood, and this kept him busy. He also carried a gun.

Ralph Porter, a brother-in-law of Dorothy Gordon, testified that he was in the theatre premises the evening of the occurrence. He heard McGhee tell Jack Gordon he wanted to talk to him because he wanted to make everything all right with Mr. Grossman [the theatre manager], and McGhee said "OK." He then went inside the theatre to see the movie. While there he heard two shots.

Arcell McGhee, called as a witness under Section 60 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 60), testified that he purchased a .38 snub-nosed revolver in Geneva, Wisconsin. He took it to the Filmore Police Station and had it registered with the Chicago Police Department.

George Watson, a police officer for the City of Chicago, was called as a witness. Officer Watson appeared pursuant to a subpoena requiring him to produce certain police records. He identified plaintiff's exhibit no. 13 as a firearm and serial index card used when firearms are registered, plaintiff's exhibit no. 14 as a gun record listing the ownership of a certain firearm by its serial number, plaintiff's exhibit no. 15 as a gun record also listing the firearm by serial number and plaintiff's exhibit no. 16 also as a gun record listing the firearm by serial number, its owner, and place and time of purchase. He testified that all four exhibits were records kept in the ordinary course of business by the Chicago Police Department, and all four were received into evidence. Officer Watson testified that the exhibits showed that a Smith and Wesson revolver, blue steel, 38 caliber, six shots, serial number C66085 was registered to one Arcell McGhee, who was listed as having the occupation of theatre manager.

Appellant contends that it was error to submit defendant's special interrogatory to the jury in that it was ambiguous, misleading and not directed to an ultimate fact. In the answer filed by the defendants to the amendment to the amended complaint, they alleged as an additional de-

fense that "any force used by Arcell McGhee against Edgar Jack Gordon on the occasion in question was used in self-defense and was in fact and was reasonably believed to be necessary to defendant himself and to prevent imminent death or great bodily harm to himself."

■■ The function of a special interrogatory is to require the jury's determination as to one or more specific issues of ultimate fact, and is a check upon the deliberations of a jury. *Sommese v. Maling Bros., Inc.*, 36 Ill.2d 263, 222 N.E.2d 468.

■■ Appellant argues that the special interrogatory does not relate to any ultimate fact because it fails to limit the force used by defendant McGhee. "The most that is established by the special finding is that defendant McGhee was using force to defend himself when he killed decedent. This is an evidentiary fact rather than the ultimate fact of legal defense." We have examined the record and conclude that this objection is without merit. The conduct of the decedent was an issue in the case and in the judgment of the trial judge it was an ultimate fact to be considered by the jury, and we believe he was correct.

It is also claimed that there was in fact no evidence that the decedent made any attack on McGhee. There is circumstantial evidence to the contrary. The decedent had formerly been a theatre employee and had been discharged for failure to do his work assignment. He was, however, given a shoe-shine concession in an adjacent part of the premises. There had been many disturbances from time to time in the theatre which required the hiring of bouncers. On the evening in question the theatre manager, Leonard Grossman, said it was a wild and rough evening and there was a lot of trouble in the place used by the decedent. There had been trouble there on previous occasions.

At 9:00 P.M. he told the decedent to close up because many of the boys in his place were drunk, belonged to gangs and would cause him trouble. Gordon answered that he would close up and get rid of the boys. Ten minutes later, however, the decedent who was drunk, called him vile names, chased him about the premises and yelled he would get him. He fled into the box office. McGhee stepped in between them and took Gordon outside. Later the decedent apologized to Grossman, and at 10:00 P.M. Grossman left the theatre. When the police came after the shooting they took a knife out of the decedent's hands.

While it is true that there was no direct evidence that McGhee may have been acting in self-defense, which justified his killing of decedent, the evidence did comprise a number of facts and incidents which, joined together, convinced the jury that the chain of circumstantial evidence and the reasonable inferences to be drawn therefrom was extremely strong that McGhee shot the decedent in self-defense. McGhee took the

stand as a witness for the defense. Plaintiff objected to any testimony to be offered by him as to the occurrence under the Deadman's Act, and the objection was sustained.

■■ We also reject the claim that the special interrogatory was ambiguous and misleading. Much of the argument is based on the use of words "any force." It is argued that the gravest defect in this special interrogatory is its incurable ambiguity arising out of the use of the word "any." Although plaintiff's counsel generally objected to the giving of the special instruction which had been drafted he was specifically asked, "It is not because of the word 'any' that you base your objection, is it?" and he replied, "that is right." He cannot change that position in the reviewing court. The record shows that a conscientious judge gave plaintiff's counsel ample opportunity to suggest any change in the wording of this instruction, but no suggestions were forthcoming. It is also argued that the interrogatory used the words "self-defense as defined in these instructions" when in fact there was no explicit definition of self-defense in the body of instructions. The court gave defendant's offered instruction I.P.I. Criminal 24.06, which reads:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent or great bodily harm to himself."

This instruction, together with the other given instructions, cannot be said to have confused or misled the jury.

■■ We find no merit to the further contention that this special interrogatory assumes the fact that an assault was committed by decedent on McGhee prior to the shooting. We find no explanation in the brief how plaintiff arrives at this conclusion from a fair reading of this instruction. Nor can we agree that the special finding of the jury is consistent and reconcilable with the general verdict. In *Knapik v. Stefek*, 274 Ill.App. 19, relied on by plaintiff, the defendant made no motion for judgment to be returned upon the special finding and is therefore inapplicable here.

■■ The plaintiff further contends that an instruction given to the jury dealt with the right of one to possess a gun which was not justified and does not correctly state the law. This instruction was not concerned with the special interrogatory. The judgment for defendants was based solely on the answer to the special interrogatory. We must note that while the jury was given this instruction they nevertheless rendered a general ver-

dict in favor of plaintiff. At best it could only be considered a harmless error and did not mislead the jury or prejudice the plaintiff.

■■ We find no merit to the final contention that it was error to admit defendant's exhibit purporting to be analysis sheet of the toxicologist showing the result of the blood alcohol test of decedent's blood. We believe the record establishes that a proper foundation was laid for this evidence.

The judgment of the Circuit Court is therefore affirmed.

Judgment affirmed.

ADESKO, J., concurs.

Mr. PRESIDING JUSTICE DIERINGER, dissenting:

I respectfully dissent from the majority opinion for the following reasons. I cannot agree that the special interrogatory was properly given. It is conceded by all parties that self-defense is an affirmative defense shifting the burden of proof to the defendant. Plaintiff's instruction No. 24, which was given, reads:

"A person in the sole control, possession and management of a deadly weapon at the time it explodes and injures another has the burden of showing that such explosion was not by any negligence or guilt on his part, or was in the exercise of self-defense."

That simply means a person in control of a deadly weapon which explodes and injuries another has the burden of showing that it was not by any negligence or fault on his part but was in the exercise of self-defense. The defendant's instruction No. 1 (I.P.I. 24.06) says:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself,"

meaning that such force had to be used to prevent imminent death or bodily harm to defendant. The court also gave defendant's instruction No. 10 (I.P.I. 10.03 modified):

"As to Count I it was the duty of the plaintiff's decedent, before and at the time of the occurrence, to use ordinary care for his own safety. That means it was the duty of the plaintiff's decedent to be free from contributory negligence,"

which means it was plaintiff's duty to be free from contributory negli-

gence. The jury was also given plaintiff's instruction No. 12 (I.P.I. 10.08):

"If you decide there is evidence tending to show that the decedent was a person of careful habits, you may infer that he was in the exercise of ordinary care for his own safety and for the safety of others at and before the time of the occurrence, unless the inference is overcome by believable evidence. In deciding the issue of the exercise of ordinary care by the decedent you may consider this inference and any other evidence upon the subject of decedent's care,"

which allows the jury to infer that plaintiff was in the exercise of ordinary care.

There is no evidence in this record that any attack or assault was made by the decedent upon the defendant that required his use of such force as defined in the instruction to constitute self-defense. There is not an iota of proof that the deceased did anything, and from a circumstantial evidence view of the statement of one of the witnesses to the effect that a knife was removed from the decedent's hand by a policman fifteen minutes after the incident occurred, and after the same witness had first looked at the body and saw nothing in the hands, does not rise to the inference that there was an attack, but is a question for the jury to decide. The knife was not produced in evidence, nor was the policeman called to testify that there was such a knife removed by him. Furthermore, a knife can be anything from a penknife to a butcher knife. The witness did not even say it was an exposed knife and leaves the whole matter open to speculation.

The majority opinion says the decedent was drunk and touches on the testimony of Leonard Grossman, manager of the theater where the killing occurred. However, the jury also heard Grossman testify that about 9:00 P.M. that evening, he went to the shoe shine parlor and talked with the deceased and asked him to close up the shoe shine stand, and the deceased, Gordon, agreed. About ten minutes later, Gordon came into the theater and Grossman told him he thought he was drunk. About ten minutes later, Gordon came back and apologized to Grossman and said, "You know I am your best friend. I am sorry. I didn't mean what I said. Let's forget it." Grossman said, "O.K.," shook hands with Gordon and went home. Grossman left the theater about five minutes after ten and did not know what happened until the police called him. He did not see Gordon have anything to drink on the night of the shooting. When he had the argument with Gordon, he did not call the guard because it was not necessary, the affair with Gordon was a simple argument, not a fight. Grossman liked Gordon very much, and he thought Gordon was a very fine man. He laid Gordon off as janitor because he did not do the work,

having already done a full day's work when he came to the theater, and he was tired. Grossman did not know that McGhee had a pistol on May 17, 1964. About six months earlier, he saw McGhee with a pistol and told him to leave it at home. McGhee was not authorized to carry a weapon.

In regard to the test of the deceased's blood, the State Toxicologist, Franco Fiorese, who was not a doctor, testified that the record showed the decedent's blood had .135 milligrams per cent of alcohol; that the published standard runs from .100 milligrams per cent to .200 milligrams per cent and is called a stimulation stage. An individual with a level of .135 milligrams per cent would be in a state of stimulation, and in this stage inhibitions, coordination and judgment are slightly affected. There are many other factors which enter into the question, and it is impossible to determine the effect chemically of a certain amount of alcohol in a person because of the different factors and influences, such as drinking water or having food in the stomach and the particular persons' tolerance to alcohol. The reading of .135 itself does not indicate what effect it will have on a specific individual. The figure of .135 falls in the lower one-third of the stimulation range.

This is the only testimony regarding decedent's drinking, and in my opinion this court cannot say he was drunk. That was a jury question, and when they returned a general verdict in favor of plaintiff's widow and children, they decided that fact.

As to the special interrogatory, Illinois Revised Statutes, 1969, Chapter 110, paragraph 65, provides:

"When the special finding of fact is inconsistent with the general verdict, the former controls the latter, and the court may render judgment accordingly."

Judicial interpretation of this section has established that statutory inconsistency exists only when the special findings are clearly and absolutely irreconcilable with the general verdict. (*Wicks v. Cueno-Henneberry Co.* (1926), 319 Ill. 344; *Devine v. Federal Life Ins. Co.* (1911), 250 Ill. 203.) Where an examination of the jury findings reveals that a reasonable hypothesis consistent with the general verdict exists, the special findings cannot be said to be absolutely irreconcilable. Therefore, if the special findings do not cover all the issues submitted to the jury and are not solely determinative of the case, a reasonable hypothesis consistent with the general verdict exists. This principle was applied in *Knapik v. Stefek* (1934), 274 Ill.App. 19, and recently by this court in *Cohen v. Sager*, No. 54891. In *Knapik, supra*, the special interrogatory failed to reach the question whether plaintiff knocked the defendant down. Because the jury could decide this question in the affirmative and

concurrently hold that he had not acted maliciously, the statute was held inapplicable. In *Cohen, supra,* the court said:

"The special findings did not exclude every reasonable hypothesis consistent with the general verdict. It is entirely consistent with reason that the jury found that while the defendant was negligent in causing the collision, no injury was suffered or that her injury was not proximately caused by the defendant's negligence. We hold that these special findings do not control the general verdict and that the trial court was in error."

In the instant case the interrogatory is confusing in that asking the jury if "any force" was used by the defendant must necessarily bring a "Yes" answer, because the defendant admited the use of force in his affirmative answer and plea of self-defense. The jury was perfectly logical in answering it "Yes," because it gave the jury no choice. A "No" answer would mean no force was used when, in fact, the defendant admitted he used force when pleading self-defense. "Any force," as stated in the interrogatory, is not sufficient to rise to the degree of self-defense as stated in the instructions, namely, the imminent fear of death or great bodily harm. The majority opinion says the interrogatory requested the jury to "specifically find that defendant McGhee was acting in self defense on the occasion in question." In cannot find such language in the interrogatory, and I cannot see how it could be so read by a lay jury, who had just found in a general verdict that the defendant was not acting in self-defense. A special interrogatory cannot control the general verdict unless all of the essential elements are included and it is inconsistent with the general verdict. *Wicks, supra; Cohen, supra.*

In *Hocking v. Rehnquist* (1968), 100 Ill.App.2d 417, 424, the court said:

"Interrogatories should contain a single correct question and should not be repetitious, misleading, confusing or ambiguous. The interrogatory should, of course, use the same language or terms as are contained in the instructions. The interrogatory given in the instant case fails in this regard."

To me, the special interrogatory lacked the essential elements to reach the ultimate fact and should not have been given. I think having given the interrogatory and requiring an answer from the jury, the answer is consistent with the general verdict in the use of "any force," for the same had been conceded, and the special interrogatory is not inconsistent. The majority opinion refers to the conference between the trial judge and the lawyers regarding the interrogatory in question and says counsel for the plaintiff was given an opportunity by the trial judge to make changes or rewrite the interrogatory, and not having accepted the

invitation, he has now changed his position in this court, which he may not do. He has not changed his position, because he made his objections to the interrogatory as a whole, stating it was ambiguous, had no evidentiary basis, and did not reach the ultimate fact. Because he did not complain of one word, "any," is of no importance inasmuch as the interrogatory must be read in its entirety to get the thought sought to be conveyed. A lawyer is under no duty or obligation to correct his opponent's errors or mistakes, neither must he rewrite his opponent's instructions or interrogatories, and the court cannot require him to do so. All he is required to do is state his objections, which he did. This court must consider every word in the interrogatory to ascertain its full meaning, including the word "any."

I think it is error to set aside the general verdict for $17,500 in favor of the widow and five children and enter a judgment for the defendants. I would reverse and enter judgment for the plaintiff for $17,500 against both defendants.