THE BEVERLY BANK, Guardian of the Estate of LARRY HOLLIDAY, a Minor, Plaintiff-Appellant, *v.* THE PENN CENTRAL COMPANY *et al.*, Defendants-Appellees.

(No. 58362;

First District (3rd Division)—July 3, 1974.

David P. Schippers and Michael J. McArdle, both of Schippers, Betar, Lamendella & O'Brien, of Chicago, for appellant.

Bernard Harrold and John Lowrey, both of Wildman, Harrold, Allen & Dixon, of Chicago (Calvin K. Hubbell, of counsel), for appellees.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Beverly Bank, as guardian of the estate of Larry Holliday, a minor, filed a two-count complaint in the circuit court of Cook County charging the Penn Central and Norman Young, one of its former employees, with negligence and wilful and wanton conduct for injuries caused Holliday when a shotgun held by Young discharged during Young's pursuit of several trespassers on the railroad's premises. The trial judge dismissed the negligence count prior to trial, and the jury found for the defendants on the second count. The jury also found by special interrogatory that Holliday was guilty of contributory wilful and wanton conduct which proximately contributed to cause his injuries. The trial court entered judgment on the verdict, and, after it denied plaintiff's post-trial motion, plaintiff filed this appeal.

The facts are as follows. On June 30, 1970, Norman Young, a probationary security policeman for Penn Central, was working the midnight to 8 A.M. shift. His duties included patrolling the railroad's premises at various locations, keeping unauthorized persons from trespassing upon the property, and recovering lost or stolen property stored on the premises. His patrol area on the night in question included the 47th Street Complex, which stretched from approximately 4200 to about 5800 South, and from Princeton Avenue to a block past Shields Avenue in the City of Chicago. Young, and other corroborating witnesses, considered the area highly dangerous. It had been the scene of armed trespassing juveniles and rock-throwing crowds. Patrol cars had been shotup, and armed assaults had occurred, resulting in injuries to various personnel. Prime targets in the area for trespassers were piggy-back trailers standing on flatcars, which frequently stored various kinds of merchandise. On the night previous, Young helped recover some television sets which recently had been stolen from the piggy-back trailers.

When Young arrived at work at 11:45 P.M. on June 29, Sergeant Esposito, his supervisor, informed him of some trouble at the 51st Street Yard, and the two men proceeded there in a squad car. Young removed a shotgun from the trunk and loaded it with 00 buckshot. Although the 51st Street Yard was found to be secure, Young kept the gun in the car for the duration of his patrol.

At about 4:45 A.M., the two men replaced the aforementioned televi-

sion sets in the trailers. Young subsequently walked toward the flatcars with the shotgun slung over his shoulder. Between 5 and 5:30 A.M., Young heard noises sounding to him like a seal breaking and trailer doors opening. He walked toward the noise with his shotgun now held at waist level. It was daylight, and when Young had progressed to within 60 yards of the piggy-back trailers he clearly observed five males standing on a flatcar taking merchandise out of the trailer. Young yelled, "Halt, police officer," and, as he began to run toward the trailer "as fast as he could," he released the safety on the shotgun and placed his finger on the trigger. Young testified that when he closed to within 40 yards of the flatcar, he tripped over debris and the gun discharged. Holliday was shot in the back, and received severe injuries resulting in paralysis.

Esposito, who was in the area, corroborated Young's testimony that the latter issued a warning. He also testified that only one shot was fired.

Larry Holliday testified that he was with a group of people who observed railroad patrolmen placing television sets in a piggy-back trailer earlier that evening. He stated that some members of a local gang wanted him and others to steal the sets. Holliday stated that he never intended to steal anything, but that he voluntarily accompanied a friend onto the railroad's premises. Holliday knew that his friend intended to steal. He also believed the railroad's security personnel were armed. Holliday's friend jumped up on the car to break into the trailer containing the television sets. Holliday testified that he heard a gunshot and, upon seeing his friend start to run, also began to flee. During his flight, he testified that a second shot rang out, hitting him in the back. He denied hearing any warning to halt.

Plaintiff contends that the trial court erred in dismissing the negligence count of the complaint; in instructing the jury on the applicable law on trespass; and in permitting into evidence certain prejudicial and inflammatory testimony. It also urges that the finding of the jury that Holliday was guilty of contributory wilful and wanton conduct that was one of the proximate causes of his injury was against the manifest weight of the evidence.

Plaintiff first contends that the trial court committed reversible error in dismissing its negligence count. It claims that, as a discovered trespasser, Holliday was owed a duty of reasonable care by the defendants. The defendants insist that the only duty owed to Holliday was to guard against wilfully and wantonly injuring him, and thus contend that the trial court correctly dismissed the negligence count. The evidence amply supports the position that Holliday must be considered a discovered trespasser.

■■ Historically, although an express or implied invitee was owed the

duty of ordinary care by the owner or occupier of premises (*Pauckner v. Wakem* (1907), 231 Ill. 276, 83 N.E. 202), no obligation arose to keep the premises safe for trespassers and licensees, including children (*McDermott v. Burke* (1912), 256 Ill. 401, 100 N.E. 168), and the only duty owed to a trespasser or licensee was to refrain from wilfully or wantonly injuring him. *Marcovitz v. Hergenrether* (1922), 302 Ill. 162, 134 N.E. 85.

■■ Slowly, certain exceptions have been created concerning the standard of care owed to trespassers. Where a trespasser is a child, the basic test of responsibility now is whether the owner or occupier of land could have foreseen harm to the child. (*Kahn v. James Burton Co.* (1955), 5 Ill.2d 614, 126 N.E.2d 836.) Another situation that will cause a relaxation of the wilful and wanton conduct standard is in the case of frequent trespass over a limited area. (*McDaniels v. Terminal Railroad Association* (1939), 302 Ill.App. 332, 23 N.E.2d 785.) A third exception is the discovered trespasser rule. This doctrine, adopted by the great majority of jurisdictions, provides that an owner or occupier of premises owes to a trespasser the exercise of reasonable care for the trespasser's safety once his presence is known.

Illinois has joined the other jurisdictions in accepting this last exception to the trespasser rule. Our supreme court indicated its adherence to it in *Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181, 81 N.E.2d 866, when it stated at page 186:

> "[T]o a trespasser the owner owes only the duty not to wilfully and wantonly injure him and to use ordinary care to avoid injury to him after his presence on the premises in a place of danger has been discovered."

Also see *Cullmann v. Mumper* (1967), 83 Ill.App.2d 395, 228 N.E.2d 276; *Patterson v. Byrne* (1960), 24 Ill.App.2d 565, 165 N.E.2d 374 (abstract opinion).

■■ We reject defendants' attempt to confine the discovered trespasser exception to very limited instances. Defendants attach great significance to the term "place of danger." They seek to confine application of the doctrine to those situations in which the discovered trespasser will "almost certainly be injured, if ordinary care is not taken for his safety because the trespasser cannot alleviate the danger through unilateral action." In our view, the rigidity of such a test would totally negate the remedial impact of the exception, since the failure of a defendant to take any helpful action in the type of fact pattern hypothesized by defendants would seemingly meet the wilful and wanton standard itself. We prefer to place a far more flexible meaning upon "place of danger." In our view, it means nothing more than to be in a position whereby

the trespasser may be injured if the defendant does not exercise the proper degree of care. (See *Briney v. Illinois Central R.R. Co., supra,* at 187.) The duty in such a case is for the owner or occupier to exercise reasonable care in his actions for the discovered trespasser's safety. We conclude that the trial court erred in dismissing the negligence count of the complaint. It necessarily follows, as plaintiff also contends, that the court erred in instructing the jury on the applicable law of trespass, since the instruction restricted the duty owed to Holliday by defendants to avoid only wilful or wanton conduct to him.

The issue of whether these errors rise to the level of reversible errors depends upon our resolution of plaintiff's next contention. Plaintiff argues that the jury's finding by special interrogatory that Holliday was guilty of contributory wilful and wanton conduct which proximately caused his injury was against the manifest weight of the evidence. The validity of such a special finding would render the errors harmless since plaintiff would be barred from any recovery based upon the special finding. See *Greenlee v. John G. Shedd Aquarium* (1961), 31 Ill.App.2d 402, 176 N.E.2d 684.

■■ The function of a special interrogatory is to require a jury's determination as to one or more specific issues of ultimate fact, and is considered a check upon the jury's deliberations. (*Gordon v. J. L. Manta, Inc.* (1972), 3 Ill.App.3d 657, 279 N.E.2d 475.) The answer of a jury to a proper special interrogatory as to a material question of ultimate fact is binding upon the trial court unless not supported by any competent evidence or unless it is against the manifest weight of the evidence. *Todd v. Borowski* (1960), 25 Ill.App.2d 367, 166 N.E.2d 296.

■■ Contributory wilful and wanton conduct is a complete defense to an action charging the same. (*Zank v. Chicago, R.I. & P.R.R. Co.* (1959), 17 Ill.2d 473, 161 N.E.2d 848.) Wilful and wanton conduct is difficult to define. Whether an act constitutes such conduct is greatly dependent upon the particular facts in each case, and it is within the peculiar province of the jury to consider. (*Kelly v. Burtner* (1941), 310 Ill.App. 251, 33 N.E.2d 754.) A party need not have intended that any harm should ensue for an act to be deemed wilful and wanton. It is sufficient if he had notice which would alert a reasonable man that substantial danger was involved and that he failed to take reasonable precautions under the circumstances. (*Hatfield v. Noble* (1963), 41 Ill.App. 2d 112, 190 N.E.2d 391.) Moreover, one can be guilty of such conduct not only through an error in judgment but also from a failure to exercise judgment. (*Dursch v. Fair* (1965), 61 Ill.App.2d 273, 209 N.E.2d 509.) To show that plaintiff was in violation of the law is not in and of itself

sufficient to constitute contributory wilful and wanton conduct. *Bezemek v. Panico* (1939), 301 Ill.App. 408, 23 N.E.2d 216.

We do not believe that the jury's finding that Holliday was guilty of contributory wilful and wanton conduct was contrary to the manifest weight of the evidence. He was an admitted trespasser in an area subject to frequent trespass. He voluntarily accompanied a friend on the premises who he knew intended to steal. The incursion took place very early in the morning, and Holliday believed the railroad security officers would be armed. We believe that Holliday, as a reasonable person, based upon the present facts, should have been alerted to the real possibility that an accident involving injury might occur which would necessitate reasonable precautions on his part.

■■ Where unlawful conduct is involved, one must bear in mind the distinction between conduct directly or proximately producing or helping to produce the result, as the efficient cause of the fact, and between conduct serving merely as a necessary occasion for the result to occur, as a mere attendant circumstance of the injury. (*Lerette v. Director General of Railroads* (1922), 306 Ill. 348, 137 N.E. 811.) As the court stated in *Lerette*, the unlawful act must *in some way* proximately contribute to the injury. Proximate cause will be found to exist when the injury suffered is the natural and probable result of an act or omission which an ordinary prudent person should have foreseen as likely to occur, although the precise injury need not have been foreseen. *Neering v. Illinois C. R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497.

■■ We are compelled to hold that the jury could have determined that Holliday's actions proximately contributed to cause his injury. The circumstances surrounding his trespass, as outlined above, are the key. An ordinary and prudent person should have foreseen that an accident in such a situation would occur. The triers of fact were entitled to believe that Young fired only one shot, and that the trespassers fled after hearing Young's warning to halt. It should be observed also that Holliday was found some 40 yards away from the location where the trespassers were originally sighted. This court cannot disturb the controverted question of fact relating to proximate cause.

We conclude that the jury's special finding that Holliday was guilty of contributory wilful and wanton misconduct which proximately caused his injury was not contrary to the manifest weight of the evidence. Accordingly, we must hold the trial court's errors regarding the dismissal of the negligence count and the instruction to the jury to be harmless.

Plaintiff also contends that the trial court erred in allowing certain prejudicial evidence to be admitted into evidence. It initially points out

84

two occasions whereby defense counsel asked questions implying that Holliday may have been charged with a crime for his trespass onto the railroad's premises. In the one instance, plaintiff made a timely objection, and no answer to the question was made. In the other instance, plaintiff's objection was immediately sustained. In denying plaintiff's motion for a mistrial as a result of the two questions, the trial court stated that in view of Holliday's admissions that he was a trespasser and plaintiff's admission that there was evidence of stealing, the court did not believe the two questions asked by defense counsel were prejudicial. We agree. The questions were improper, but in view of the record, were insubstantial and hence harmless.

■■ Plaintiff also argues that the trial court incorrectly permitted defendants to introduce testimony of other complaints of trespass and theft, assaults on various security officers, and the security problems existing in the area. Plaintiff has not furnished this court with an abstract or excerpts of the trial record. Nevertheless, we have carefully reviewed the entire record and believe that the testimony complained of was admissible. Defendants were charged with wilful and wanton conduct. It therefore became extremely relevant to introduce evidence relating to Young's state of mind. The very relevant evidence was not so inflammatory as to outweigh its probative value. Our review of the record also indicates that some of the testimony now complained of was elicited through cross-examination by plaintiff.

For the reasons expressed above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGLOON and MEJDA, JJ., concur.